UNION GUARDIAN TRUST CO. *v*. NICHOLS.

1. TRUSTS—CONSTRUCTION OF AGREEMENT—INTENT.
    The intent of the parties to a trust agreement, as gathered from the entire instrument, controls notwithstanding that there may be some language therein that is ambiguous or in derogation of the interior sense of the transaction.

---

Nature of the beneficiary's interest when the trust property is realty, see 1 Restatement, Trusts, §§ 130, 131(1); when the trustee has a power but not a duty to convert realty into personalty, see § 131, comment c; distinction between a trust and an agency, see § 8.

2. SAME—SEPARATION OF LEGAL FROM BENEFICIAL INTEREST IN REAL ESTATE.

The conveyance of the title of real estate to a corporation which gave a mortgage to a trust company that issued certificates of participation to the corporation-mortgagor's grantors separated the legal from the equitable interest, where it appears the trust company had no interest except that of a trustee, although the use of the terms "settlors" and "trustee" in the instrument was merely indicative.

3. SAME—INTENT—WORDS AND PHRASES.

The use of the terms "settlors" and "trustee" in an instrument may be indicative that a trust was created but are not, standing alone, absolutely decisive, if the inner meaning of the instrument and certificates of interest issued by the "trustee" do not show a trust relationship.

4. MORTGAGES—NATURE OF INTEREST IN REAL ESTATE—FORECLOSURE.

While a mortgage and note are personal property, a mortgage on real estate does create a contingent interest in real estate which by foreclosure may become an absolute one.

5. TRUSTS—MORTGAGES.

Instrument whereby mortgagee, a trust company, issued certificates of participation to persons who had conveyed the property to corporate mortgagor, which vested title to the mortgage in the trustee, *held,* to have created an express trust.

6. SAME—STATUS OF REAL ESTATE UPON FORECLOSURE OF TRUST MORTGAGE.

Where real property was bid in by trustee after it had foreclosed trust mortgage and the trustee was empowered to hold and manage the property for the benefit of the holders of certificates of participation in the trust, the real estate is then held in trust.

7. SAME—NATURE OF BENEFICIARY'S INTEREST.

Where real estate is held in trust imposing duty upon trustee to sell it and hold the proceeds in trust or distribute the proceeds, the interest of the beneficiary is personal property, before conversion.

Appeal from Monroe; Golden (Clayton C.), J. Submitted January 17, 1945. (Docket No. 71, Calendar No. 42,066.) Decided April 9, 1945.

Bill by Union Guardian Trust Company against Elliott S. Nichols and wife, John M. Reid, Hobart B. Hoyt and wife, Arthur J. Holstein and wife, and Collateral Liquidation, Inc., for instructions and directions in the disposition of property held by it as trustee and retention of jurisdiction pending liquidation, distribution and closing of estate. From decree entered, defendant Reid appeals. Affirmed.

*Floyd M. Phinney* and *Hollis Harshman,* for defendant Reid.

*William M. Donnelly,* for defendants Nichols.

*Hobart B. Hoyt,* for defendants Hoyt.

*Miller, Canfield, Paddock & Stone,* for defendant Collateral Liquidation, Inc.

Butzel, J.   Defendants Nichols and Reid purchased certain property in Monroe county, Michigan, but still owed defendant Hoyt a considerable amount on the purchase price of part of the property.   These three defendants sold and deeded the property to the Lagoona Beach Company, which in turn executed its notes and a purchase-money mortgage in the sum of $305,000, all running to the Union Trust Company of Detroit, Michigan.   The trust company subsequently changed its name to Union Guardian Trust Company, plaintiff herein. The $305,000 was divided into serial notes, $35,000 being payable on September 1, 1927, and a like amount each year for four years, and then larger amounts each year until September, 1933, when the entire balance was to become due.   Almost contemporaneously with the giving of the mortgage,

Messrs. Nichols, Reid and Hoyt, as "settlors," entered into a trust agreement with the trust company as "trustee" in which they stated that the settlors had caused the mortgage and notes to run to the trust company, and that the mortgage debt at the date of the mortgage and "now is" owned by the settlors; that the settlors do covenant and agree that participation certificates in the form attached to the agreement should be issued in the total amount of the mortgage debt. They designated the amount of the participation certificate to be given each one of the settlors, Mr. Hoyt to receive the balance due him from the first $35,000 due under the mortgage. The trustee was to hold, manage and dispose of the mortgage and notes and interest and principal thereof as the property of the settlors. It was further stated how the payments should be disposed of, the trust company agreeing to give proper attention to the handling of the mortgage and the collection of the payments thereof. It further provided:

"The Union Trust Company hereby agrees to give proper attention to the handling of said mortgage and the collection of the principal thereof, and the interest thereon. The said trustee has the right and is authorized and empowered to take any and all steps deemed by it, on advice of counsel, necessary or expedient for the protection of the interests represented by the certificates of this issue. In the event of default under the terms of said mortgage the trustee may, and upon the request of the holder or holders of one-third in amount of the certificates of this issue then outstanding, and upon being indemnified to its satisfaction, shall declare the principal sum then unpaid due and payable immediately and shall proceed to enforce the said mortgage in such manner as may in the opinion of counsel be

most effectual to protect the rights of the holders of said certificates."

Further provisions in the participation certificate, attached to the trust agreement and made a part thereof, are as follows:

"The said trustee is authorized and empowered in connection with the foreclosure of said mortgage, to bid in the property covered thereby at foreclosure sale, in the interest of the holders of said certificates, and to hold, manage, and in its discretion to dispose of the same for their account, in proportion to their respective interests, provided that the holders of two-thirds in interest of said certificates outstanding may at any time, in writing, direct any particular disposition of said property to be made.   *   *   *

"The interest represented hereby is transferable only on the books of the trustee, at its office in the city of Detroit, Michigan, in person or by attorney, on surrender of this certificate properly indorsed."

No question is raised as to the release of certain acreage from the mortgage because of some question of title.  Defendant John M. Reid, the sole appellant herein, received five participation certificates aggregating $77,341.45 in amount.  He also received others not directly involved in this litigation.

On June 1, 1932, no payments having been made on the mortgage and a large amount also being due for taxes, a decree of foreclosure was entered by the circuit court for the county of Monroe in chancery.  In this case Messrs. Nichols, Reid and Hoyt joined with the trust company as parties plaintiff. On January 5, 1933, after foreclosure sale, a deed was executed by the circuit court commissioner to the Union Guardian Trust Company which bid in

the property for approximately the amount due on the mortgage. On January 30, 1933, when the equity of redemption on the mortgage had not yet expired, defendant Reid borrowed from the Union Guardian Trust Company the sum of $25,125 on a collateral note and secured it by indorsing in blank the foregoing participation certificates amounting to $77,341.45. The note to the trust company referred to the collateral as a pledge and empowered the trust company to sell the collateral at public or private sale in the event of default and to apply the proceeds towards the payment of the note. Both Mr. Reid, the maker of the note, and the trust company treated the participation certificates as personal property, and if the instant case were not to be decided on a more important issue, hereafter discussed, the question would arise if Mr. Reid, the appellant, was not estopped by his conduct from making the claims he now asserts on appeal.

Collateral Liquidation, Inc., became the owner of the note and the collateral long after its maturity. In accordance with the terms and conditions of the note and the statutes relative to the sale of collateral, 2 Comp. Laws 1929, § 9561 *et seq.* (Stat. Ann. § 19.411 *et seq.*), it proceeded to sell the collateral. It bid it in for $10,000 and applied this sum on the note. On December 10, 1938, suit was instituted against Reid for the balance due on the note, and a large judgment was rendered against him for the deficiency. Appellant also had transferred $5,000 of participation certificates as personal property to one Arthur J. Holstein, who, together with his wife, were made parties defendant herein. No question is raised by appellant as to the regularity of this transfer. It was stated at the hearing that Holstein had transferred his interest to another party.

On May 22, 1941, the Union Guardian Trust Company received a letter signed by certificate holders Arthur J. Holstein, Hobart B. Hoyt, Collateral Liquidation, Inc., and Elliott S. Nichols stating 'that they were the owners and holders of the certificates of participation issued pursuant to the trust agreement and asking that the property be conveyed to them as tenants in common in proportion to their respective interests as evidenced by said certificates. They were entitled to such a deed under the terms of the trust agreement. John M. Reid, however, claims that he still is entitled to his interest in the real estate. He demanded that he be made a party to the deed to the extent of the certificates that had been issued to him and which Collateral Liquidation, Inc., claimed to own. Appellant claims that there was no trust created whatsoever, and that, moreover, when the property was bid in for the full amount of the mortgage by the trust company at the foreclosure sale, even if a trust was created, it came to an end and the owners of the participation certificates became tenants in common of the property, and that the attempted sale of the property by Collateral Liquidation, Inc., was a nullity as an interest in real estate could not be sold as a pledge. *Union Guardian Trust Co.* v. *Rood,* 261 Mich. 188.

The trial court filed no written opinion. In his decree he denied appellant's claims. No question is raised as to the failure of Collateral Liquidation, Inc., to make a proper transfer of the certificates on the books of the Union Guardian Trust Company. The provision hereinbefore quoted in regard to making such transfer on the books of the company is made principally for the protection of the trust company and to avoid any question of the rights of any third parties who might make an adverse claim to that of the transferee. There are no claims of

third parties. The testimony showed that the trustee had knowledge of the fact that Collateral Liquidation, Inc., claimed some interest in the certificates. The assignments of the certificates as collateral are not set forth but are referred to without objection in the testimony. Appellant makes no claim that they were not properly transferred.

On appeal appellant claims that there was never any trust created, and that the trust company never obtained any trust corpus. It is true that the trust instrument stated that the mortgage debt was "at the date of such mortgage" and is now owned by the "settlors;" and also referred to the mortgage as the property of the settlors. The intent of the parties to the trust agreement, as gathered from the entire instrument, controls notwithstanding that there may be some language therein in derogation of the interior sense of the transaction. *Foster* v. *Ypsilanti Savings Bank*, 299 Mich. 258. In construing such contract, we must give effect to the true intent of the parties notwithstanding any nomenclature to the contrary or ambiguous statements in the instrument. *Goodrich* v. *City National Bank & Trust Company of Battle Creek*, 270 Mich. 222. The use of the words "settlors" and "trustee" as used in the instrument are indicative, but standing alone are not absolutely decisive, if the inner meaning of the instrument and the certificate did not show the trust relationship. We conclude that the title to the mortgage and note was vested in the trust company as trustee for the parties. They did not want a mortgage to run to a large number of people in proportion to their respective interests. They disposed of their title to the property when the deed was given to the Lagoona Beach Company and a mortgage was taken back not to themselves but to the trust company as trustee. The trust company had no interest in the property except as

trustee. There was a transfer of designated property to the trust company as trustee with the intention of passing the title thereto to hold for the benefit of others. There was a separation of the legal estate from beneficial enjoyments. This was in strict accordance with the case of *Equitable Trust Co.* v. *Milton Realty Co.*, 263 Mich. 673. Also, see *Union Guardian Trust Co.* v. *Lipsitz,* 268 Mich. 209; *Giblin* v. *Detroit Trust Co.*, 270 Mich. 293. It was an express trust. The participation certificates in the instant case are in many respects similar to mortgage bonds executed by a mortgagor and secured by the mortgage running to the trustee.

While a mortgage and note are personal property, a mortgage on real estate does create a contingent interest in real estate which by foreclosure may become an absolute one. The title to the mortgage was vested in the trust company. Appellant claims, however, that the purpose of the instrument was to give the trust company a power of attorney for the participants or to create some other relationship about which he is uncertain. He also insists that it was not a trust instrument. We see no merit to this contention. We hold a trust instrument was created.

Appellant further claims that the mortgage had been paid and that one cannot have a participation certificate when the mortgage ceases to exist, and that the participation certificate after foreclosure represented an interest in real estate which could not be sold as personal property. There is some confusion in the law on this subject, but we find but little authority for plaintiffs' contentions. Possibly it is due to the fact that such a claim has seldom been made. Although there are but few holders of participation certificates in the present case, there might at other times be a very large number of mortgage participants or bondholders. The ques-

tion involves title to real estate and should be disposed of with finality as far as the facts in the case permit. If appellant is correct, we can readily see how, in the case of a death of a holder of a participation certificate or mortgage bond, questions of devolution might arise. It might even be very difficult at times to locate some of the holders of certificates of mortgage bonds. It might necessitate the probating of many estates, both of resident and nonresident deceased holders of participation certificates or bonds. It might even affect the construction of a will which, although good if the certificates or bonds were personal property, might nevertheless be assailed because the assets of the estate contained certificates or bonds which appellant claims are real estate. There would even be a question whether the holder of a certificate after foreclosure of the mortgage could dispose of it without the signature of his wife as to her dower interest. See *Sagendorph* v. *Lutz*, 286 Mich. 103, where we held that the wife had no dower interest and that the transactions should be viewed as a whole, and under the theory of equitable conversion the trust *res* should be considered and treated as personalty. There, however, was no foreclosure in that case. There might be some force to appellant's claim as to the rights after foreclosure were it not for the fact that the trust agreement distinctly gave the trust company the right and power to take any steps it deemed expedient to enforce the mortgage and that were necessary and expedient for the protection of the interest represented by the certificates, and in connection with the foreclosure sale for the protection of the holders of the certificates, and to hold, manage and dispose of the same, *et cetera*. The trust company retained the power to dispose of the real estate. Although the certificate holders, possibly as a precaution, were joined as

plaintiffs in the foreclosure suit, they permitted the company to buy in the property in its own name as it had a right to do under the mortgage, and then dispose of it. All that the certificate holders would have been entitled to, had the trust company disposed of the real estate it acquired on foreclosure, would have been the proportionate shares from the proceeds of the property. One of the purposes of such a trust, when looked at realistically, is to make the certificates or bonds issued thereunder readily transferable as personal property, the same as if they were certificates of stock, so that they retain their character as personal property until there is a conversion into a different kind of property, either by action of interested parties in accordance with the rights given them under the trust agreement or by an order or decree of a court of competent jurisdiction over the corpus of the trust.

The general rule is stated in 1 Restatement of the Law of Trusts, § 131, as follows:

"If real property is held in trust and by the terms of the trust a duty is imposed upon the trustee to sell it and hold the proceeds in trust or distribute the proceeds, the interest of the beneficiary is personal property."

This rule is applicable to participation certificates and mortgage bonds even after foreclosure of the mortgage if the trustee, as the purchaser at the foreclosure sale, has the right to sell the property thus acquired and distribute the proceeds. We believe that the interest of the beneficiary remains personal property until conversion is made in accordance with the foregoing paragraphs.

Decree for appellees is affirmed, with costs.

Starr, C. J., and North, Wiest, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.