**In re Michael Duane WILCOX, Debtor.**

**Charles J. TAUNT, Trustee, Plaintiff,**

**v.**

**GENERAL RETIREMENT SYSTEM OF the CITY OF DETROIT and the Board of Trustees of the General Retirement System of the City of Detroit, Defendants.**

**Bankruptcy No. 96–41268–S.
Adversary No. 96–4871–S.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Jan. 21, 1998.

152

**153**

Catherine L. Nelson, Plunkett & Cooney, Bloomfield Hills, MI, for Plaintiff.

Michael S. Khoury, Judith Greenstone Miller, Clark Hill, P.L.C., Detroit, MI, for Defendants.

## MEMORANDUM OPINION

WALTER SHAPERO, Bankruptcy Judge.

This matter comes before the Court on cross motions for summary judgment made pursuant to Fed.R.Bankr.P. 7056 and Fed. R.Civ.P. 56, in this adversary proceeding brought by Plaintiff (Chapter 7 Trustee Charles J. Taunt), against defendants (General Retirement System of the City of Detroit and the Board of Trustees of the General Retirement System of the City of Detroit), seeking turnover of Debtor, Michael Duane Wilcox's, interest in the Annuity Savings Plan administered by Defendants. Plaintiff claims that no genuine issue of material fact remains for trial that Debtor's interest in the Plan is property of the estate, while Defendants claim just the contrary. Because this Court agrees with Plaintiff that, as a matter of law, Debtor's interest in the Plan became property of the bankruptcy estate upon Debtor's filing of the Chapter 7 petition, Plaintiff's motion for summary judgment is GRANTED, and defendant's motion for the same is DENIED.

### Facts and Background

On January 31, 1996, Debtor filed a voluntary Chapter 7 bankruptcy petition. At the time of the filing, Debtor was (and continues to be) employed by the City of Detroit ("City"). As a City employee, Debtor participates in the Defined Contribution Plan, also known as the Annuity Savings Plan ("the Plan"), administered by Defendants. This Plan is funded solely through Debtor's voluntary contributions from his salary, and provides that the funds will accumulate until death, disability, twenty-five years of service, or termination of employment, at which time Debtor may withdraw all funds in a lump sum or receive them in monthly allotments. Because the Plan qualifies under 26 U.S.C. § 401(a) of the Internal Revenue Code ("I.R.C."), Debtor's contributions are tax deferred. Debtor's accumulated interest in the Plan as of the date of filing was $32,141.66.[1]

On July 19, 1995, prior to filing his bankruptcy petition, Debtor entered into a revolving loan agreement with the Detroit Municipal Credit Union ("DMCU") with a loan limit of $6,500. Debtor "pledged" his interest in the Plan as collateral for the loan by entering into a "Security Agreement, Pledge and Assignment, Re: Defined Contribution Plan (Annuity Savings Fund)" ("Agreement"). The Agreement provided:

I, Michael Wilcox, ("Debtor") . . . do hereby pledge, assign, convey, transfer and grant a security interest to the Detroit Municipal Credit Union ("Secured Party") of the proceeds of my Defined Contribution Plan, also known as my annuity savings fund amounts (commonly referred to as a refund of proceeds of defined contribution plan) held by the Board of Trustees of the General or Policemen and Firemen Retirement System of the City of Detroit. *I acknowledge that the decision of the Detroit Municipal Credit Union to grant my loan request was based upon the pledge and assignment of the proceeds of my annuity savings fund amounts now on deposit and acquired hereafter as collateral for the loan amount.* Said annuity savings fund amount is only available upon retirement or termination of employment.

1. Debtor also participates in a separate Defined Benefit Retirement Plan that is funded exclusively by the City. Debtor listed his interest in that Plan as $509.00 on Schedule B of his bankruptcy schedules, and claimed the interest exempt under 11 U.S.C. § 522(d)(5) on Schedule C. Debtor's exemption regarding his interest in this Plan is not at issue.

* * *

I authorize and direct any person involved in the processing or handling of the said refund of the proceeds of said annuity savings fund to forward such check to the Detroit Municipal Credit Union for deposit in my account I authorize the Secured Party to endorse said check and deposit the proceeds in my account. I authorize the Secured Party to provide a copy of this document to my employer and retirement system which copy shall serve as an irrevocable direction and authority of my employer and retirement system to forward said check to Secured Party. I authorize the Detroit Municipal Credit Union to enforce its lien and security interest on the annuity savings fund proceeds by withdrawing from my account owing to the Detroit Municipal Credit Union, or any other method of lien enforcement authorized by law in the event of my default under this loan transaction of this date.

(See Security Agreement, Pledge and Assignment, RE: Defined Contribution Plan (Annuity Savings Fund) attached as Exhibit 1 to Trustee's Response to Defendants' Motion for Summary Judgment (emphasis added).)

Debtor listed his interest in the Plan on Schedule B of his bankruptcy schedules, but claimed that his interest was exempt pursuant to 11 U.S.C. § 522(d)(10)(E), as necessary for support of Debtor and his dependants. Plaintiff objected to Debtor's claim of exemption. A hearing was held on Plaintiff's objection, at which time Debtor stipulated that his interest in the fund was property of the estate. Notice of that hearing and proceeding was not given to Defendants. Accordingly, on July 11, 1996, an order was entered by the Court granting Plaintiff's objection to the exemption. (See Order Granting Trustee's Objection to Exemption, July 11, 1996).

On July 19, 1996, Plaintiff submitted the entered Order to Defendants, requesting that Debtor's interest in the Plan be turned over to Plaintiff. Defendants refused to comply. As a result, on November 6, 1996, Plaintiff filed this adversary proceeding against Defendants seeking turnover of Debtor's interest in the Plan.

On May 19, 1997, Defendants filed the instant motion for summary judgment, claiming that no genuine issue of material fact remains for trial that Debtor's interest in the Plan does not constitute property of the estate under 11 U.S.C. § 541(c)(2), and that Defendants are entitled to judgment as a matter of law. Defendants argue that, because the Plan sets forth a restriction on the transfer of interest that is enforceable under nonbankruptcy law, because the Plan has been qualified by the I.R.C. as tax exempt, and because Debtor has no present rights in the fund, Debtor's interest cannot be considered property of the bankruptcy estate.

On July 2, 1997, Plaintiff filed a cross motion for summary judgment claiming that no genuine issue of material fact remained that, as of July 12, 1996 (the date of Debtor's stipulation that his interest in the Plan was property of the estate), Debtor's interest in the Plan became property of the estate under 11 U.S.C. § 541, and could not be considered exempt under 11 U.S.C. § 522(d)(10)(E). Plaintiff also claims that no genuine issue of fact material fact remains that Debtor's contributions to the Plan are not excluded from property of the estate under 11 U.S.C. § 541(c)(2), because the Plan's restriction on transfer clause is not enforceable under nonbankruptcy law. Finally, Plaintiff claims that Defendants do not have standing to challenge this issue. A hearing was held and the matter was taken under advisement.

### Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986)). Once the moving party satisfies its burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Simply put, summary judgment is appropriate where the issues in a case involve no more than the application of legal principles to undisputed facts. *See, Choate v. Landis Tool Co.*, 486 F.Supp. 774, 775 (E.D.Mich.1980).

### Analysis

In analyzing the parties' respective motions for summary judgment, two main issues must be decided. First, whether Defendants have standing. Second, whether 11 U.S.C. § 541(c)(2) excludes from property of the Debtor's estate any or all of Debtor's interest in the Plan.

### I.

### Standing Issue

Plaintiff argues that, because the right to an exemption may not be asserted by others on behalf of a debtor, Defendants do not have standing to assert their claim. Defendants acknowledge that a right to exemption is personal to a debtor; however, Defendants argue that they are not attempting to assert Debtor's right to exemption here. Rather, Defendants claim that they are challenging whether Debtor's interest in the Plan should ever enter the bankruptcy estate at all, and therefore need not be listed as exempt. In other words, Defendants argue that because they base their challenge to Debtor's interest upon § 541(c)(2) as property not part of the bankruptcy estate, and not upon § 522(d)(10)(E) as property of the bankruptcy estate that is exempt, they have standing to asset their claim. This Court agrees with Defendants.

■ It is well established that assertion of an exemption under bankruptcy law is personal to the debtor. *Lasich v. Wickstrom (In re Wickstrom)*, 113 B.R. 339, 351 (Bankr. W.D.Mich.1990); *Bishop v. Cates (In re Cates)*, 73 B.R. 874, 877 (Bankr.D.Or.1987). The right to an exemption may not be asserted by others on behalf of the debtor. *Cates,*

73 B.R. at 877 (citing *Matter of Osburn*, 56 B.R. 867 (Bankr.S.D.Ohio 1986)). However, a challenge as to whether a debtor's asset is excluded from the bankruptcy estate under § 541(c)(2) may be asserted by a party in interest, even when the debtor concedes or does not otherwise contest that the asset is included in the estate. *See, e.g., Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121, 1122 (8th Cir.1989). Therefore, Defendants in the instant case have standing to challenge whether Debtor's interest in the Plan is property of Debtor's bankruptcy estate under § 541(c)(2).

### II.

### Property of the Bankruptcy Estate Issue

■ Because alienation and transferability provisions vary among retirement plans, the application of § 541(c)(2) to such plans must be made on a case by case basis, where each case and plan is evaluated on its own facts. *Simon v. Braden (In re Braden)*, 69 B.R. 93, 94 (Bankr.E.D.Mich.1987). Therefore, a brief overview of the Plan at issue is necessary before analyzing the application of § 541(c)(2) to the Plan and facts of this case.

### A.

### The Annuity Plan

The City of Detroit Charter, that established and governs the Plan, describes the Plan as follows:

Sec. 1. Annuity Savings Fund.

(a) The Annuity Savings Fund shall be the fund in which shall be accumulated at regular interest the normal contributions of members to provide their normal annuities and the additional contributions of members to provide their additional annuities. From and after September 2, 1996, the normal contributions of a member to the retirement system shall be the sum of three per cent of the amount of his annual compensation that may be subject to taxation under the provisions of the Federal Insurance Contribution Act plus five per cent of the portion of his annual compensation, if any, which exceeds the amount of his annual compensation that may be sub-

ject to taxation under the provisions of the Federal Insurance Contributions Act.

(Exhibit D, p 32, Attached to Plaintiff's Motion for Summary Judgment.)

City employees voluntarily contribute to this Plan.

Title 9, Chapter 6, Article 9, Section 1 of the 1974 [2] Charter sets forth a restriction upon alienation, as required under 26 U.S.C. § 401(a), for favorable tax treatment. Specifically, the anti-alienation provision states:

Sec. 1. Assignments Prohibited.

The right of a person to a pension, annuity, or retirement allowance, to the return of accumulated contributions, the pension, annuity or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this chapter and the moneys in the various funds of the retirement system shall be unassignable and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or any other process of law whatsoever, except as specifically provided in this chapter.

(See Exhibit C, p 37, attached to Defendants' Brief in Support of Motion for Summary Judgment.)

### B.

*The Application of 11 U.S.C. § 541(c)(2)*

Under 11 U.S.C. § 541, the bankruptcy estate generally consists of all legal and equitable interests of the debtor at the time of filing of the bankruptcy petition. The scope of the bankruptcy estate under § 541 was intended to be quite broad. *Swanson,* 873 F.2d at 1122. However, under § 541(c)(2), restrictions on the transfer of any beneficial interest a debtor may have in a trust that is enforceable under applicable nonbankruptcy law, including federal law such as the Employment Retirement Income Security Act of 1974 ("ERISA") [3], may be excluded from

property of the bankruptcy estate.[4] *Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The application of § 541(c)(2) requires a three-step analysis: (1) whether the debtor's interest is a beneficial interest in a trust; (2) whether there is a restriction on the transfer of that beneficial interest; (3) whether that restriction is enforceable under nonbankruptcy law. *Id.*

█ In the recent case of *In re Dunn,* 215 B.R. 121, 123–25 (Bankr.E.D.Mich.1997), Chief Judge Steven Rhodes analyzed a Debtor's interest in the identical Plan under similar facts using that three-step inquiry, and found that the Debtor's interest was not excluded from property of the estate under § 541(c)(2) as a trust, because the anti-alienation clause was not enforceable under applicable nonbankruptcy law. Specifically, Judge Rhodes found that, although the Plan was a trust and does have a restriction on transfer, that restriction was not enforceable under federal nonbankruptcy law (ERISA or the I.R.C.), nor was the restriction enforceable under state law as a spendthrift trust. *Id.* This Court agrees with Judge Rhodes' conclusion in *Dunn,* and therefore finds that Debtor's interest in the same Plan is not excluded from property of Debtor's bankruptcy estate under § 541(c)(2).

#### 1. *Whether Debtor's Interest in the Plan is Held in Trust by Defendants*

In order to find an express trust arrangement, the following must be present: (1) a clearly defined *res;* (2) an unambiguous trust relationship; and (3) specific, affirmative duties undertaken by a trustee. *See In re Johnson,* 691 F.2d 249, 252–53 (6th Cir.1982). The use of the words "settlor" and "trustee" in the body of an agreement are not necessary if the nomenclature in the instrument establishes a trust arrangement. *See Union*

---

**2.** Defendants note that the 1997 City Charter simply incorporates all provisions existing as of the date of the 1974 Charter. (See Exhibit A, attached to Defendants' Brief in Support of Motion for Summary Judgment.)

**3.** 29 U.S.C. § 1001 *et seq.*

**4.** Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

*Guardian Trust Co. v. Nichols,* 311 Mich. 107, 18 N.W.2d 383, 385 (1945).

Here, all three elements of an express trust are present. First, Debtor's voluntary contributions to the Plan define a clear *res.* Second, an unambiguous trust relationship exists where Debtor, and similarly situated employees, contribute money to the Plan with the intention that it be administered by Defendants. Third, the Plan outlines specific, affirmative duties that Defendants, who are referred to in the Plan as "trustees," must undertake. Therefore, although the word "trust" does not appear in the language of the Plan itself, this Court concludes that the funds contributed to the same are clearly held in an express trust. *See Johnson,* 691 F.2d at 252–53; *Nichols,* 18 N.W.2d at 385.

#### 2. *Whether There is a Restriction on the Transfer of that Beneficial Interest*

As noted *infra,* Title 9, Chapter 6, Article 9, Section 1 of the 1994 City Charter, that established and governs the Plan, sets forth a restriction upon alienation provision. Therefore, having found that the Plan is held in trust, and that there is a restriction on the transfer of Debtor's beneficial interest in the Plan, the relevant inquiry becomes whether that restriction is enforceable under applicable nonbankruptcy law. *Shumate,* 504 U.S. at 758, 112 S.Ct. 2242.

#### 3. *Whether the Restriction is Enforceable Under Applicable Nonbankruptcy Law*

In *Shumate,* the Supreme Court resolved a split among the circuits as to whether "applicable nonbankruptcy law" as referred to in § 541(c)(2), was limited to state law regarding spendthrift trusts. *Shumate,* 504 U.S. at 757, 112 S.Ct. 2242. In holding that the text of § 541(c)(2) does not support such a limitation, the Court found that the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA. *Id.* at 759, 112 S.Ct. 2242. Thus, this Court must examine the restriction at issue under applicable federal and state law.

##### a. Federal Nonbankruptcy Law
##### ERISA

Because ERISA provides for enforcement of the required transfer restriction, a plan that is ERISA qualified is excluded from the bankruptcy estate without regard to state spendthrift trust law. *Shumate,* 504 U.S. at 760, 112 S.Ct. 2242. However, as found by Judge Rhodes in *Dunn,* the Plan at issue is not subject to ERISA because it is a governmental plan. *See Dunn,* 215 B.R. at 125–26 (citing 29 U.S.C. § 1002(32), § 1003). Therefore, the restriction is not enforceable under ERISA.

##### I.R.C.

The Internal Revenue Service issued a letter to Defendants on March 5, 1997, stating that the Plan qualified under 26 U.S.C. § 401(a) for favorable tax treatment. Defendants claim that restriction is enforceable because of the Plan's § 401(a) status. Stated differently, Defendants invite this Court to adopt the premise that, once a restriction on alienation qualifies a plan for § 401(a) status, the restriction automatically is enforceable under nonbankruptcy law for purposes of § 541(c)(2). The Court declines Defendants' invitation.

As stated, in *Shumate,* the Supreme Court settled a dispute within the circuits as to whether the phrase "applicable nonbankruptcy law," as used within § 541(c)(2), is limited to state law regarding spendthrift trusts, and found that language of this provision did not embrace such a limitation. *Shumate,* 504 U.S. at 757–59, 112 S.Ct. 2242. The Court also held that a plan that is ERISA qualified is excluded from the bankruptcy estate without regard to state spendthrift trust law, because ERISA provides for enforcement of the required transfer restriction. *Id.* at 760, 112 S.Ct. 2242. However, the Court did not extend this reasoning to a plan that qualifies under 26 U.S.C. § 401(a).

Since *Shumate,* several courts have grappled with the issue of whether a plan's qualification under § 401(a) alone (a plan that does not also qualify under ERISA), creates an enforceable restriction against transfer.[5]

---

5. *See, e.g., Dunn,* 215 B.R. at 126–28; *In re Copulos,* 210 B.R. 61, 64 (Bankr.D.N.J.1997); *In re Hall,* 151 B.R. 412, 418–421 (Bankr. W.D.Mich.1993); *In re Witwer,* 148 B.R. 930, 936–37 (Bankr.C.D.Cal.1992), *aff'd,* 163 B.R. 614 (9th Cir. BAP 1994).

The majority of the cases decline to expand the holding of *Shumate* to this degree. *See, e.g., Dunn,* 215 B.R. at 126–28. This Court agrees with those cases on the basis that, unlike a plan qualified under § 401(a), a restriction may be enforced by a participant in an ERISA qualified plan. *Id.* (citing *Witwer,* 148 B.R. at 937). In other words, because an ERISA qualified plan creates substantive rights that a beneficiary or plan participant may enforce, such a plan automatically creates an enforceable restriction irrespective of state spendthrift trust law. However, because an IRC § 401(a) qualified plan does not, by itself, create such a substantive right, it alone does not automatically create an enforceable restriction. *Id.* (citing *Witwer,* 148 B.R. at 937; *S.E.C. v. Johnston,* 922 F.Supp. 1220, 1225 (E.D.Mich.1996)).

Accordingly, this Court agrees with the holding in *Dunn* that the Plan's § 401(a) status alone is insufficient to find a restriction enforceable. The issue then becomes whether the restriction is enforceable under state spendthrift trust law.

### b. State Nonbankruptcy Law

■ If the restriction on alienation is enforceable under Michigan law as a spendthrift trust, then the Plan qualifies for protection under § 541(c)(2). *Dunn,* 215 B.R. 121, 127–28. In *Fornell v. Fornell Equip., Inc.,* 390 Mich. 540, 213 N.W.2d 172 (1973), the Michigan Supreme Court embraced the following definition of a spendthrift trust:

> "In a broad sense, a spendthrift, support, or other similarly protective trust is one created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence of incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts. The name 'spendthrift trusts' is poorly descriptive, since no spend thriftiness or profligacy of a beneficiary is requisite to, or open to inquiry in determination of, the existence of such a trust." 54 Am.Jur., Trusts, § 148, p 123.

*Fornell,* 213 N.W.2d at 176.

■ "Spendthrift trusts are upheld on the theory that the donor of the trust has the right to give his property on any condition he sees fit, and the beneficiary's creditors cannot complain that the settlor did not give his bounty to them. A person cannot, however, create a true spendthrift trust for himself." *Id.*

Here, the Plan at issue is funded solely through voluntary contributions by Debtor. Therefore, because the Plan is self-settled, the restriction on transfer is not enforceable because the Plan cannot be considered a spendthrift trust under Michigan law. *Fornell,* 213 N.W.2d at 176. *See also In re Idalski,* 123 B.R. 222, 233 (Bankr.E.D.Mich. 1991) (antialienation provisions in employee benefit plans that are funded solely by employee voluntary contributions are not enforceable under state law because the plans are self-settled).[6]

Accordingly, although the Court finds that Debtor's beneficial interest in the Plan is held in a trust, and that there is a restriction on that beneficial interest, the Court concludes that the restriction is not enforceable

---

**6.** Defendants also raise a cursory argument that, because the Plan was established pursuant to the City Charter; because the Charter has always provided for a restriction on the transfer of a beneficial interest in the Plan; and because the state statute governing the retirement plans of municipalities other than cities electing to be Home Rule jurisdictions (Mich. Comp. Laws Ann. § 38.40 (West 1997)), also contains an antialienation provision, the restriction at issue is enforceable. This Court is not persuaded by Defendants' unsupported argument. Defendants provide no authority to support their claim that simply because City Charters or their State (or some other governmental) counterpart provide for a restriction on alienation, the restriction is per se enforceable, and this Court is not inclined to adopt such reasoning. Furthermore, this Court could not find relevant authority to support Defendants' argument. Rather, this Court's search found the case law regarding Defendants' claim distinguishable and not relevant to the facts at hand. *See In re Dunn (Supplement to Opinion),* 215 B.R. 848 (Bankr.E.D.Mich.1997) (citing *Wyrzykowski v. City of Hamtramck,* 324 Mich. 731, 37 N.W.2d 686 (1949)).

under federal or state law. As such, Debtor's interest is not excluded from property of the bankruptcy estate under § 541(c)(2). *Shumate*, 504 U.S. at 757, 112 S.Ct. 2242.

## C.
### Distribution of Debtor's Interest in the Fund

■ Because this Court finds that Debtor's interest in the Plan is property of the estate under § 541, the issue becomes whether Plaintiff is able to compel Defendants to turnover Debtor's interest in the Plan as determined or valued at the time of filing.

Defendants argue that, because Debtor remains employed by the City and thus has no present right to withdraw contributions from the Plan, nor would Debtor be eligible to obtain a withdrawal within 180 days of the time of filing bankruptcy, Plaintiff cannot compel turnover because Plaintiff's rights in the Plan cannot exceed Debtor's rights. Plaintiff, however, argues that if the transfer restriction is unenforceable, then Debtor can freely assign, transfer, or otherwise dispose of his interest in the "shattered trust," and that Plaintiff should be able to do the same because Plaintiff stands in Debtor's shoes. In other words, Plaintiff argues that if the transfer restriction is not enforceable, then Debtor has present rights in the plan that should be available to Plaintiff.

Defendants rely upon *Magill v. State Employees' Retirement Sys. of Ill. (In re Lyons)*, 957 F.2d 444 (7th Cir.1992) in support of their position. In *Lyons*, the Court of Appeals for the Seventh Circuit resolved a split among the courts in that circuit, and held that a trustee could not compel turnover of a debtor's contributions to a state employee pension plan (even if such contributions were estate property) when the debtor had no present right to the plan, because the trustee's claim to estate property is no greater than the debtor's claim at the time of filing. *Id.* at 445–46. The Court recognized that its holding did not further the Bankruptcy Code's goal of encouraging the expeditious administration of the bankruptcy estate for the benefit of creditors. *Id.* However, the Court believed that a contrary holding would

violate the Code because it would give the trustee greater rights in the property of the debtor's estate than the debtor had at the time of filing. *Id.* In arriving at this conclusion, the Court noted that courts in other jurisdictions had reached a contrary result and compelled turnover of similarly situated funds. *Id.* at 446 n. 3.

■ This Court recognizes and embraces the basic premise of bankruptcy law followed in *Lyons*, that a trustee succeeds only to the title and rights in property that the debtor had at the time he filed the bankruptcy petition. However, this Court finds that compelling turnover of Debtor's interest in the Plan to Plaintiff does not violate this premise due to the character of the Plan and the manner in which Debtor was allowed to control his interest in the same. Unlike the Debtor in *Magill*, who was not allowed to withdraw contributions for hardship, loans, or payments to creditors, Debtor in the present case was allowed to pledge his interest in the Plan to obtain loans. *Magill*, 957 F.2d at 445. Specifically, because the restriction on transfer is not enforceable under nonbankruptcy law, and because Debtor was allowed to pledge his interest in the Plan as collateral for a loan with the DMCU, this Court believes that Debtor had present rights in the Plan at the time of filing that are available to Debtor's creditors.

As stated, because the Plan at issue is a self-settled trust by Debtor, it is not a valid spendthrift trust under Michigan law, and Debtor's interest therein may be obtained by his creditors. *See Fornell*, 213 N.W.2d at 176. A self-settled trust "is binding on [the settlor] in so far as it is still within his power to alien or encumber it with debts;" however, it would be inequitable to allow such a trust to be binding on the beneficiary's creditors. *Id.* (quoting 54 Am.Jur., Trusts, § 166, p 135). Such is the case here, where Debtor voluntarily placed tax deferred contributions in the Plan, and was allowed to alien and encumber his interest by pledging it as collateral for a loan with the DMCU. As such, the Court cannot allow the inequitable result of preventing Debtor's other creditors, whose interests are similar to that of the DMCU, from reaching his interest in the Plan. *Ac-*

cord *Hunter v. Ohio Citizens Bank (In re Hotchkiss)*, 75 B.R. 115, 118–20 (Bankr. N.D.Ohio 1987) (finding that where a pension plan did not qualify as a spendthrift trust, the Debtor's interest in the same was not excluded under § 541(c)(2), and therefore compelled turnover of the Debtor's interest to the Trustee).

Support for this Court's conclusion is also found in *Dunn.* There, on at least two occasions, the Debtor pledged his interest in the Plan as collateral for a loan with the DMCU. Judge Rhodes concluded that "[t]he practical result of the arrangements among Dunn [the Debtor], the Detroit Municipal Credit Union and the GRS is that Dunn can obtain distributions of Plan funds at any time, regardless of the Plan provisions regarding distribution." *Dunn*, 215 B.R. at 128–29. To elaborate, despite the transfer restriction, Debtor is able, basically at his whim, to obtain access to his interest in the Plan by borrowing the desired amount from the DMCU. The arrangement between Defendants, the DMCU, and Debtor (as well as similarly situated debtors) has effectively left Debtor with what is analogous to and the functional equivalent of a revolving loan agreement that affords Debtor continuous access to his interest in the Plan. The substantive result is thus not materially different than if what Debtor had was a regular savings account solely in his name (with the added bonus of tax preferential treatment). Simply put, when looked at in that proper perspective, because Debtor is able to have effective access to his interest in the Plan at anytime (albeit by pledging his interest to the DMCU through security agreements) without terminating his employment or retiring, it logically follows that Plaintiff should also enjoy similar immediate access to the fund. Thus viewed, such conclusion does not do violence to the principle that a trustee's rights should not be greater than a debtor's rights, but is actually consistent with this principle.

Accordingly, this Court concludes that Defendants are compelled to turnover to Plaintiff the value of Debtor's interest as of the time of the bankruptcy filing. To hold otherwise under these facts would defeat the pur-

pose of § 541(c)(2) and effectively render it a nullity, because Debtor would enjoy the protection § 541(c)(2) provides, without meeting the requirements of this section. The spirit of the Code, if not the Code itself, prohibits such a result.

Plaintiff shall submit an order consistent with this opinion.