*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0389P (6th Cir.)
File Name: 00a0389p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: MICHAEL DUANE
WILCOX,

               *Debtor*.

———————————

CHARLES J. TAUNT, Trustee,
      *Plaintiff-Appellee*,


      *v.*


GENERAL RETIREMENT
SYSTEM OF THE CITY OF
DETROIT and BOARD OF
TRUSTEES OF THE GENERAL
RETIREMENT SYSTEM OF THE
CITY OF DETROIT,
      *Defendants-Appellants*.

No. 99-1726

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 98-60511—Barbara K. Hackett, District Judge.

Argued: August 4, 2000

Decided and Filed: November 13, 2000

1

Before:  NELSON and NORRIS, Circuit Judges; MATIA,
Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:**    Peter A. Jackson, CLARK HILL, Detroit, Michigan, for Appellants.  Timothy A. Fusco, CHARLES J. TAUNT & ASSOCIATES, Birmingham, Michigan, for Appellee.  **ON BRIEF:**  Lira A. Johnson, CLARK HILL, Detroit, Michigan, Judith Greenstone Miller, CLARK HILL, Birmingham, Michigan, for Appellants.  Timothy A. Fusco, CHARLES J. TAUNT & ASSOCIATES, Birmingham, Michigan, for Appellee.  Ernest L. Jarrett, Detroit, Michigan, for Amicus Curiae.

_____

**OPINION**

_____

DAVID A. NELSON, Circuit Judge.    Although the Bankruptcy Code provides, in general, that all of a bankrupt debtor's property interests are to be turned over to the trustee in bankruptcy for the benefit of creditors, the code creates the following exception:  "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."  11 U.S.C. § 541(c)(2).

The debtor in the case at bar has a beneficial interest in assets held by the trustees of a municipal employees' retirement plan.  The terms of the plan have been effectively incorporated in the city charter adopted by the municipality pursuant to state law home-rule provisions.  The plan (and thus the city charter) provides that the debtor's interest is

_____

[*] The Honorable Paul R. Matia, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

"unassignable" and is not subject to execution, attachment, or the operation of bankruptcy law.

The question presented is whether this restriction is "enforceable under applicable nonbankruptcy law." If it is, the restriction is enforceable in bankruptcy proceedings as well, and the debtor's pension rights are not to be turned over to the trustee in bankruptcy. If the restriction is not enforceable, we shall assume for purposes of this opinion that the trustee in bankruptcy can compel a turnover. (There is a timing issue in this connection, but we need not reach that question.)

Concluding that the restriction on transfer is not enforceable under applicable nonbankruptcy law, the bankruptcy court entered a summary judgment in which it held that the debtor's retirement plan interest had to be turned over to the bankruptcy trustee. The district court affirmed that judgment on appeal. On *de novo* review, however, we conclude that the restriction is enforceable under applicable nonbankruptcy law. We shall therefore reverse the district court's disposition of the case.

I

The Michigan Constitution gives Michigan cities the power to adopt charters and ordinances.[1] It further provides that the

---

[1]The relevant provision reads thus:

"Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section." Mich. Const. Art. VII, § 22.

"provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor." Mich. Const. Art. VII, § 34.

The Michigan Home Rule City Act, Mich. Comp. Laws §§ 117.1 *et seq.*, authorizes charter cities to exercise any power, enumerated or not, that advances the interests of the city. Mich. Comp. Laws § 117.4j(3).[2] Michigan courts commonly treat city charters just as they do any other source of state law. See, *e.g.*, *City of Detroit v. Walker*, 520 N.W.2d 135, 139 (Mich. 1994) (holding that traditional principles of statutory construction apply to the Detroit City Charter).

Pursuant to the authority granted by the Michigan Constitution and the Michigan Home Rule City Act, the City of Detroit has established a defined contribution retirement plan for its employees. The plan, which is funded by voluntary employee contributions, is administered by the General Retirement System of the City of Detroit.

For decades, the city's defined contribution retirement plan – the terms of which were initially written into the Detroit City Charter – has contained an anti-assignment provision reading as follows:

---

[2]This provision reads as follows:

"Sec. 4-j. Each city may in its charter provide:

* * *

"(3) Municipal powers. For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state."

retirement system chooses not to honor a request to disburse funds in violation of applicable law, it is enforcing the law. And at least one Michigan state court has held that the retirement system is entitled to seek the judicial remedy of mandamus in order to enforce the terms of the plan as contained in the Detroit City Charter. *Bd. of Trustees of the General Retirement System v. City of Detroit*, No. 88-804793-AW (Circuit court, Wayne County, Mich.), order of July 19, 1988, at 4-5. As mentioned above, the same Michigan court has held that the retirement system has a fiduciary duty to enforce the anti-assignment provision of the plan. *Lauderdale v. Detroit Municipal Credit Union*, No. 97-720027-CP (Circuit court, Wayne County, Mich.), order of March 10, 1998, at 9.

For all of the foregoing reasons, we think that the anti-assignment provision of the Detroit City Charter represents "enforceable" nonbankruptcy law for purposes of 11 U.S.C. § 541(c)(2). We therefore **REVERSE** the decision of the district court and **REMAND** the case so that the bankruptcy court may enter judgment in favor of the retirement system.

has the status of any city charter provision.[5] Michigan courts have enforced various provisions of the Detroit City Charter, including those relating to the Plan, without regard to the availability of a statutory right of action. See, *e.g.*, *Weeks v. Bd. of Trustees, City of Detroit General Retirement System*, 408 N.W.2d 109 (Ct. App. Mich. 1987) (holding that a forfeiture provision in the plan was enforceable); *Lauderdale v. Detroit Municipal Credit Union*, No. 97-720027-CP, at 9 (Circuit court, Wayne County, Mich., March 10, 1998) (holding that the General Retirement System of Detroit had a fiduciary duty to enforce the anti-assignment provision of the plan). When a Michigan appeals court considered the benefits available to Detroit police officers, it said that "[w]ell-established rules of statutory construction mandate that we *enforce* this clear statutory and *city charter language*." *Crowe v. City of Detroit*, 603 N.W.2d 107, 110 (Ct. App. Mich. 1999) (enforcing a provision of Detroit's police retirement plan) (emphasis added). And Michigan courts have enforced similar retirement plan provisions enacted in city ordinances. See, *e.g.*, *Hubbard v. Bd. of Trustees of Dearborn Retirement System*, 29 N.W.2d 779, 781 (Mich. 1948) ("The definitions contained in the [pension plan] ordinance must be given full force and effect"). Michigan courts obviously have no doubt about the enforceability of city charter or ordinance provisions relating to retirement plans; such provisions are enforced when the court follows their command in deciding a case.

We note also that the non-alienation provision of the Detroit plan is enforceable by the retirement system itself, which controls the disbursement of funds. When the

---

[5] As the provisions of the Michigan Constitution and Home Rule City Act make clear, cities such as Detroit are empowered to enact any ordinance or charter provision deemed necessary for the public interest, as long as the enactment is not contrary to or preempted by the state constitution or state laws. *Rental Property Owners Ass'n of Kent County v. City of Grand Rapids*, 566 N.W.2d 514, 519 (Mich. 1997). Anti-alienation provisions clearly meet this test, and the bankruptcy trustee does not contend otherwise.

"The right of a person to a pension, annuity, or a retirement allowance, to the return of accumulated contributions, the pension, annuity or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this chapter and the moneys in the various funds of the retirement system *shall be unassignable and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or any other process of law whatsoever, except as specifically provided in this chapter*." Detroit City Charter, Title 9, Chap.6, Art. 9, § 1 (1964) (emphasis supplied).

Since 1974, when a new charter was adopted by the City of Detroit, the plan has been the subject of collective bargaining between the city and various unions. The plan is, however, incorporated in the charter by reference. The current version of the Detroit City Charter, adopted in 1997, accomplishes this in the following language:

"The retirement plans of the city existing when this Charter takes effect, including the existing governing bodies for administering those plans, the benefit schedules for those plans and the terms for accruing right to and receiving benefits under those plans shall, in all respects, continue in existence exactly as before unless changed by this Charter or an ordinance adopted in accordance with this article." Detroit City Charter, Art. 11, § 11-102 (1997).

The anti-assignment terms of the retirement plan have thus been continued, under the new charter, "exactly as before," no change in these terms having been effected by charter or ordinance.

(We note parenthetically that Michigan law also restricts the transfer of retirement plan interests of public employees who are not on the payroll of a home-rule municipality:

"The right of a person to a pension, an annuity, a retirement allowance, any optional benefit, any other

right accrued or accruing to any person under the provisions of this act, the various funds created by this act, and all money and investments and income of the funds, are exempt from any state, county, municipal, or other local tax, and *shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law, and shall be unassignable* except as otherwise provided in this act." Mich. Comp. Laws § 38.40(1) (emphasis supplied).)

The debtor in the case at bar, Michael Duane Wilcox, is both an employee of the City of Detroit and a participant in the city's defined contribution retirement plan. The terms of the plan permit the withdrawal of funds from Mr. Wilcox's account only upon his death, the termination of his employment, his completion of 25 years of service, or his retirement under a disability. None of these conditions has been met.

Mr. Wilcox entered into a revolving loan agreement with the Detroit Municipal Credit Union on July 19, 1995. Notwithstanding the anti-assignment provision of the retirement plan, and in keeping with what appears to have been a common practice, Mr. Wilcox purported to pledge his interest in the plan as collateral for the loan.[3]

---

[3] In this connection Mr. Wilcox signed a document entitled "Security Agreement, Pledge and Assignment, Re: Defined Contribution Plan (Annuity Savings Fund)." The document contained the following provisions, among others:

"I, Michael Wilcox . . . do hereby pledge, assign, convey, transfer and grant a security interest to the Detroit Municipal credit Union ('Secured Party') of the proceeds of my Defined Contribution Plan, also known as my annuity savings fund amounts (commonly referred to as a refund of proceeds of defined contribution plan) held by the Board of trustees of the General or Policemen and Firemen Retirement System of the City of Detroit. I acknowledge that the decision of the Detroit Municipal Credit Union to grant my loan request was based upon the pledge and assignment of the proceeds of my annuity savings fund amounts now on deposit and acquired hereafter as

*Nat. Pension Fund*, 493 U.S. 365, 107 L. Ed. 2d 782, 110 S. Ct. 680 (1990)." *Patterson*, 504 U.S. at 760.

While the *Patterson* Court did mention, as evidence of enforceability, the existence of a statutory right to file a civil action, the Court did not suggest that the existence of such a right is an indispensable condition of enforceability. On the contrary, the Court mentioned two other indicia of enforceability: (1) ERISA's statutory requirement that plan trustees and fiduciaries discharge their duties, and (2) the Supreme Court's own enforcement of ERISA's anti-alienation provision. In *Guidry*, the case cited by *Patterson* in connection with the last point, no one had filed suit under ERISA's civil action provision; the *Guidry* Court nonetheless enforced an anti-alienation provision. It is thus reasonably clear, we think, that a statutory right of action is not necessary for nonbankruptcy law to be enforceable for purposes of § 541(c)(2).

Our sister circuits have largely agreed that, after *Patterson*, state and federal restrictions on alienation can satisfy § 541(c)(2) even where there is no statutory right of action. See, *e.g.*, *Whetzal v. Alderson*, 32 F.3d 1302, 1303 - 04 (8th Cir. 1994) (holding that the Civil Service Retirement System's anti-alienation provision was enforceable nonbankruptcy law, without regard to whether a private right of action was available); *In re Meehan*, 102 F.3d 1209, 1211 - 12 (11th Cir. 1997) (holding that a Georgia statute restricting alienation of individual retirement accounts was an enforceable nonbankruptcy law); *In re Yuhas*, 104 F.3d 612, 614 (3d Cir. 1997) (same with regard to a New Jersey statute). But see *In re Lowenschuss*, 171 F.3d 673, 682 (9th Cir.) (holding that a state anti-alienation provision must contain some "mechanism" for enforcement in order to satisfy § 541(c)(2)), *cert. denied*, 120 S.Ct. 185 (1999).

The anti-assignment provision of the Detroit plan is enforceable because it is part of the Detroit City Charter and

that home rule city charters are enforceable in Michigan as a valid exercise of municipal power.  In *Wyrzykowski* the Michigan Supreme Court declined to allow a creditor to reach the interest a city employee held in his municipal pension.  The district court distinguished *Wyrzykowski* on the ground that in that case the city had funded the pension itself, which meant that there was a valid spendthrift trust under state law.[4] *Wilcox, supra,* at 9.  The district court then reiterated its central holding: the anti-assignment provision in the Detroit plan is unenforceable because the "Charter does not contain any language which would allow a Plan participant, beneficiary, fiduciary, or a department of the State of Michigan to file a civil action to enjoin any act or practice which violates the terms of the Plan." *Id.* at 10.  In this connection the court referred to *Patterson,* 504 U.S. at 760.

We believe that the district court erred in reading *Patterson* as requiring that such a right of action be provided if an anti-assignment provision is to be considered "enforceable" for purposes of § 541(c)(2). When the *Patterson* Court discussed the enforceability of the anti-alienation provision at issue in that case, the Court made three points:

> "Plan trustees or fiduciaries are required under ERISA to discharge their duties 'in accordance with the documents and instruments governing the plan.'   29 U.S.C. § 1104(a)(1)(D).   A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to 'enjoin any act or practice' which violates ERISA or the terms of the plan. §§ 1132(a)(3) and (5). Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar. See *Guidry v. Sheet Metal Workers*

---

[4] We find this distinction unavailing.  The source of the plan's funding would be relevant only if state spendthrift trust law were necessarily the determining factor.  As we have already seen, the Supreme Court held in *Patterson* that the nonbankruptcy law referred to in 11 U.S.C. § 541(c)(2) is not limited to spendthrift trust law.

A few months after taking out the credit union loan, Mr. Wilcox filed a voluntary petition under Chapter 7 of the Bankruptcy Code.   In the course of the ensuing proceedings the bankruptcy court ordered that Mr. Wilcox's interest in the plan, which then amounted to $32,141.66, be turned over to the bankruptcy trustee.  The retirement system declined to comply with the order, advising the bankruptcy trustee that Mr. Wilcox's interest could not be turned over because (a) the plan contained an anti-alienation provision prohibiting such transfers, (b) Mr. Wilcox was not yet eligible to receive benefits, and (c) the system was not bound by the bankruptcy court's order.

The bankruptcy trustee then commenced the present adversary proceeding against the retirement system and its board of trustees.  On cross-motions for summary judgment, the bankruptcy court ruled in favor of the trustee in bankruptcy.   Following an unsuccessful motion for reconsideration, the retirement system filed a timely notice of appeal to the United States District Court for the Eastern

---

collateral for the loan amount.   Said annuity savings fund amount is only available upon retirement or termination of employment.

\* \* \*

"I authorize and direct any person involved in the processing or handling of the said refund of the proceeds of said annuity savings fund to forward such check to the Detroit Municipal Credit Union for deposit in my account. I authorize the Secured Party to endorse said check and deposit the proceeds in my account.  I authorize the Secured Party to provide a copy of this document to my employer and retirement system which copy shall serve as an irrevocable direction and authority of my employer and retirement system to forward said check to Secured Party.  I authorize the Detroit Municipal Credit Union to enforce its lien and security interest on the annuity savings fund proceeds by withdrawing from my account owing to the Detroit Municipal Credit Union, or any other method of lien enforcement authorized by law in the event of my default under this loan transaction of this date."

District of Michigan. That court affirmed, and the appeal to our court followed.

## II

The question before us, to repeat, is whether the anti-assignment provision of the defined contribution retirement plan, as incorporated in the city charter, is "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law . . . ." 11 U.S.C. § 541(c)(2).

An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust? Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under nonbankruptcy law?

Here it is undisputed that Mr. Wilcox's interest in the plan is an interest in a "trust." It is also undisputed that the anti-assignment provision purports to restrict the transfer of that interest. The parties further agree that no federal statute, such as the Employee Retirement Income Security Act or the Internal Revenue Code, restricts the transfer of Mr. Wilcox's interest. The only issue we are called upon to decide, then, is whether the incorporation of the anti-assignment provision in the city charter means that "under applicable nonbankruptcy law" the provision is "enforceable."

Dismissing as "unsupported" the retirement system's argument that the restriction on alienation is enforceable under Michigan law just as any other provision of the Detroit City Charter is enforceable, the bankruptcy court decided that the provision is not enforceable because the defined contribution plan is funded solely through the voluntary contributions of city employees. This makes the plan a "self-settled" trust, the bankruptcy court noted, and a self-settled trust cannot be considered a spendthrift trust under Michigan law. *In re Wilcox*, No. 96-41268-S, Adversary Proceeding No. 96-4871-S (Bankr. E.D. Mich.), opinion dated 1/21/98 at 13. Because the Detroit plan is not a spendthrift trust, the bankruptcy court concluded, "the restriction is not enforceable

under federal or state law." *Id.* In reaching this conclusion the court relied heavily on *In re Dunn*, 215 B.R. 121 (Bankr. E.D. Mich. 1997).

The bankruptcy court's reasoning, both here and in *Dunn*, seems to us to conflict with the United States Supreme Court's holding in *Patterson v. Shumate*, 504 U.S. 753 (1992). There a petitioner had argued, among other things, that the phrase "enforceable nonbankruptcy law" embraced state spendthrift trust law only. The Supreme Court rejected this proposition, as our court had done earlier in the case of *In re Lucas*, 924 F.2d 597 (6th Cir. 1991). Resolving a circuit split on the issue, the *Patterson* Court held that while Congress intended to include state spendthrift trust law, there was not a "sufficient basis for concluding, in derogation of the statute's clear language, that Congress intended to *exclude* other state and federal law from the provision's scope." *Id.* at 762. The *Patterson* Court left no room for doubt that "[t]he natural reading [of § 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under *any* relevant nonbankruptcy law." *Id.* at 757 (emphasis supplied). The Supreme Court has thus clearly indicated that state law other than spendthrift trust law can serve as "enforceable nonbankruptcy law" under § 541(c)(2).

When the instant case reached the district court, that court took a tack differing somewhat from the bankruptcy court's. The district court concluded that the Detroit City Charter provision was not "enforceable," for purposes of § 541(c)(2), because the charter provided no enforcement mechanism; it did "not contain any 'enforcement' language similar to that found in ERISA qualified plans." *In re Wilcox*, No. 98-CV-60511-AA (E.D. Mich.), order dated 6/2/99 at 8. The court further held that the debtor's interest in the plan did not qualify for exemption from the bankruptcy estate as an interest under a spendthrift trust. *Id.* at 10-12.

The retirement system had relied on *Wyrzykowski v. City of Hamtramck*, 37 N.W.2d 686 (Mich. 1949), for the proposition