ELECTRONIC CITATION:  2003 FED App. 0006P (6th Cir.)
File Name:  03b0006p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  RAYMOND L. ADAMS and
        JANET M. ADAMS,

              Debtors.

_____

SUSAN L. RHIEL, Trustee,

              Appellant,

v.                                                              No. 03-8011

RAYMOND L. and JANET M. ADAMS,

              Appellees.

_____

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division.
No. 01-61636

Argued: August 6, 2003

Decided and Filed:  December 10, 2003

Before: BODOH, COOK, and LATTA, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Susan L. Rhiel, RHIEL & ASSOCIATES CO., Columbus, Ohio, for Appellant.
Eleanor Beavers Haynes, Columbus, Ohio, for Appellees.  **ON BRIEF:**  Susan L. Rhiel,
RHIEL & ASSOCIATES CO., Columbus, Ohio, for Appellant.  Eleanor Beavers Haynes,
Columbus, Ohio, Mark Ditullio, Columbus, Ohio, for Appellees.

---

**OPINION**

---

JOHN C. COOK, Bankruptcy Appellate Panel Judge.  This case is before us on the bankruptcy Trustee's appeal from a ruling of the bankruptcy court that the Debtors, Mr. and Mrs. Raymond Adams, were the beneficiaries of trusts with enforceable transfer restrictions such that their beneficial interests in those trusts were excluded from their bankruptcy estate under 11 U.S.C. § 541(c)(2).  Because we conclude that the Debtors failed to carry their burdens of proof that they were beneficiaries of trusts within the meaning of 11 U.S.C. § 541(c)(2), we **REVERSE** the bankruptcy court's order and **REMAND** the case for further proceedings.

### I.  ISSUES ON APPEAL

The principal issue in this case is whether the bankruptcy court erred when it concluded that the Debtors' § 403(b) annuity plans constitute trusts within the meaning of 11 U.S.C. § 541(c)(2).

### II.  JURISDICTION AND SCOPE OF REVIEW

The panel has jurisdiction to decide this appeal under 28 U.S.C. § 158(a)(1) because the United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel of the Sixth Circuit.

The bankruptcy court's determination that the assets of these pension plans were excluded from the bankruptcy estate by operation of § 541(c)(2) is a conclusion of law which is reviewed *de novo*.  *Nicholson v. Isaacman (In re Isaacman),* 26 F.3d 629, 631 (6th Cir. 1994).  A court's findings of fact are accepted by appellate courts unless they are clearly erroneous.  Fed. R. Civ. P. 52; Fed. R. Bankr. P. 8013.

### III.  FACTS

The Debtors, Mr. and Mrs. Raymond Adams, each has an interest in a separate retirement plan, both of which are qualified under 26 U.S.C. § 403(b) as tax-sheltered annuity pension plans. Both plans contain anti-alienation clauses (transfer restrictions) that prevent the Debtors from reaching the assets of their pension funds until they are 59½ years of age.  There are certain hardship exceptions to this general rule, but none have so

far applied. No creditors can reach the assets of the Debtors' pension plans under the terms of the anti-alienation clauses.

The plans have similar structures. Mr. Adams's pension plan, established by his employer, the United Negro College Fund, provides that the employer will forward a certain percentage of his salary to one or more of the fund's sponsors, Teachers Insurance and Annuity Association, College Retirement Equities Fund, or the Equitable Life Assurance Society of the United States. The sponsors are to establish separate "accumulation accounts" for each plan participant, accumulate the plan contributions in those accounts, and afford the plan participant an opportunity to invest in various vehicles, such as stock funds, made available to him by the sponsors. Mr. Adams has sole authority to direct how his account shall be invested. Benefits may not be paid to him until he attains the age of 59½ and separates from the service of his employer, dies, or becomes disabled. Finally, paragraph 10.5 of the plan incorporates by reference the terms of each "funding vehicle" provided by the sponsor and provides that they control in case they conflict with the terms of the plan. From a certificate issued by Equitable Life Assurance Society which appears in the appendix, it appears that Mr. Adams has chosen Equi-Vest (an investment arm of Equitable) as his fund sponsor and has allocated his contributions among several stock mutual funds and an interest-bearing account.

Mrs. Adams's pension plan document is similar to her husband's, except that her employer is Children's Hospital, Inc., the accumulation accounts are called "elective deferral accounts," and the eligibility for benefits, including the time when they become payable, is controlled by the fund sponsors. These sponsors are not named in the pension plan. Paragraph 11.5 of the plan provides that the "terms of the contracts between the Fund Sponsors and the Employer and/or the Participants and any certificates issued to a Participant in accordance with the provisions of Section 5.1 are a part of the Plan as if fully set forth in the Plan document." The appendix does not contain any of the contracts between the plan administrators and the fund sponsors, and there is no information available in the record on that subject. The appendix does, however, contain part of a certificate issued by Aetna Life Insurance and Annuity Co. confirming that Mrs. Adams is a participant in its group annuity contract. The certificate appears to be incomplete, and no details are given as to how Aetna holds contributions made under the plan.

## IV. DISCUSSION

The bankruptcy court held that both of the pension plans in question were excluded from property of the estate by § 541(c)(2), which reads: "A restriction on the transfer of a

3

beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 542(c)(2). The court stated in its memorandum that "the plans are 'ERISA-qualified' as contemplated by the Supreme Court in *Patterson v. Shumate. As such*, they are not property of the estate, and are not subject to administration by the Trustee." (Emphasis added.) Thus, there is some indication that the court thought the only criterion for excluding the assets of a pension plan from the estate under § 541(c)(2) was whether the plan in question was ERISA-qualified.

The Sixth Circuit, however, requires that there be a trust: "An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust?" *Wilcox v. Gen. Ret. Sys. (In re Wilcox)*, 233 F.3d 899, 904 (6th Cir. 2000). Thus, the Trustee argues that the bankruptcy court glossed over the trust requirement in § 541(c)(2) and contends that the plain terms of the statute exclude from property of the estate only a debtor's beneficial interest in a trust, not necessarily his interest in a pension plan, or ERISA-qualified pension plan, or anything other than a trust.

In a lengthy discussion of this subject in *In re Barnes*, 264 B.R. 415, 423 (Bankr. E.D. Mich. 2001), Bankruptcy Judge Spector recognized that some courts appear to have adopted the proposition that

> an employee benefit plan need not be a trust at all: So long as the plan has an enforceable transfer restriction and is designed to function in a manner "analogous" to a spendthrift trust, the debtor's interest therein will be excluded from the bankruptcy estate pursuant to § 541(c)(2).

*Id.* The court then disagreed with that view and insisted that proof of a trust was essential to exclusion under § 541(c)(2).

> This Court rejects that proposition. There is no statutory support for the notion that in determining whether a trust was created, employee benefit plans are subject to a less stringent standard than are other assets in which the debtor holds an interest. Since § 541(c)(2) makes no distinction along these lines, neither should the courts.

*Id.* at 428 (citation omitted). We agree with and adopt the views in *Barnes* regarding the trust requirement of § 541(c)(2) and, following *Wilcox*, hold that only an interest in a trust can be the subject of an enforceable transfer restriction within the meaning of 11 U.S.C. § 541(c)(2).

The bankruptcy court also briefly stated in its memorandum that "a review of both plans reveals that the funds, even though being invested in tax sheltered annuities, are being held in trust for the Debtors' retirement." Unfortunately, the court did not explain this

4

conclusion or support it with any discussion of the terms of the plans, contracts, accounts, or annuities such as might have caused the court to view them as trusts. Neither did it offer any discussion of the legal elements of a trust or how the Debtors proved any of those elements. There is only the bare conclusion that some trusts exist.

The Debtors bear the burden of demonstrating that all the requirements of § 541(c)(2) have been met before the property in question can be effectively excluded from the estate. *Id.* at 420-21; *Pineo v. Fulton (In re Fulton),* 240 B.R. 854, 861 n. 4 (Bankr. W.D. Pa. 1999). The Debtors, therefore, must show that the property in question is the subject of a trust of which they are beneficiaries. We think it is far from self-evident that the plans in this case constitute trusts, a critical finding for exclusion from the bankruptcy estate. Although they were probably drafted by attorneys, there is no mention of a trust, much less the appointment of a trustee. There are no formal grants in trust. There is no direct manifestation of any intent to create a trust in anyone.

The term "trust" is a term of art and has a specific legal meaning. In Ohio, a trust is created by

> "an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created, accompanied with an intention to create a trust, followed by an actual conveyance . . . of definite property . . . vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust."

*Ulmer v. Fulton*, 195 N.E. 557, 564 (Ohio 1935) (quoting 65 C.J. § 21); *accord, Booth v. Vaughan (In re Booth)*, 260 B.R. 281, 290-91 (B.A.P. 6th Cir. 2001). The Restatement defines a trust in similar terms as

> [a] fiduciary relationship with respect to property, arising from a manifestation of *intention to create that relationship* and subjecting the person who holds *title* to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee.

Restatement (Third) of Trusts § 2 (2003) (emphasis added).

As we have mentioned, the bankruptcy court did not attempt to explain why the pension plans in question constituted trusts. When we examine these plans ourselves, we are left in considerable doubt about whether any trusts are involved. We have more information about Mr. Adams's plan than Mrs. Adams's, and so we will take it up first. In addition to the plan document, which establishes the relationship between Mr. Adams and his employer vis-a-vis his pension, we have an Equi-Vest certificate of participation from which we can derive some information about how the plan might work. The mechanism

described in the certificate is more complex than the outright purchase of an annuity under normal circumstances.

The Equi-Vest certificate provides that the contributions made to the plan by Mr. Adams and his employer become the property of Equitable Life Assurance Society of the United States. A "Contract is issued in consideration of the payment to Equitable of the Contributions made under the Contract." Furthermore, according to the certificate, "[a]n annuity is purchased for a person enrolled under the Contract upon receipt by Equitable of an initial Contribution by the Employer." The annuity contract is funded by contributions which are allocated among various investment vehicles such as mutual funds or money funds made available by Equitable, and the allocation is made solely at the direction of Mr. Adams. These mutual funds are held in a "Separate Account" apart from Equitable's general accounts. At his retirement date, Mr. Adams can select either an "annuity benefit" or a "cash value benefit." The annuity benefit includes any annuity offered by Equitable, including both fixed and variable annuities.

To all intents and purposes, then, Mr. Adams's pension plan provides for the purchase of an annuity with funds forwarded by his employer to Equitable. The value of the benefit Mr. Adams eventually receives depends on the amounts he contributes to Equitable and the success of his investment decisions prior to his retirement. If Mr. Adams's plan contributions are premium payments and he is merely an annuitant, it is difficult to view the plan as a trust. The purchase of an annuity ordinarily creates the relationship of debtor/creditor, not trustee/beneficiary, *Hughes v. Sun Life Assur. Co.*, 159 F.2d 110, 113 (7th Cir 1946); *In re Riley*, 91 B. R. 389, 390-91 (Bankr. E.D. Va. 1988), and "[a] debt is not a trust." Restatement (Second) of Trusts § 12 (2003). Under these circumstances, we may well wonder whether the debtors have carried their burdens of showing the existence of trusts.

The debtors argue essentially that any ERISA-qualified plan must be a trust. Turning to the applicable statutes, however, we note that there is nothing in either ERISA or the Internal Revenue Code that mandates the conclusion that these plans involve trusts. Both pension plans are drawn specifically to meet the requirements of 26 U.S.C. § 403(b), and both explicitly so state. Section 403 is headed, "Taxation of Employee Annuities" and provides in pertinent part as follows:

> If an annuity *contract is purchased* . . . then contributions and other additions by such employer for such annuity contract shall be excluded from the gross income of the employee for the taxable year. . . . The amount actually distributed to any distributee under such contract shall be taxable to the

6

distributee (in the year in which so distributed) under section 72 (relating to annuities).

(Emphasis added.)  Thus, employee benefit plans involving annuity contract purchases, as well as those involving trusts, may qualify for special tax treatment under ERISA.

The Internal Revenue Code also permits employers to contribute salary deductions from employees to custodial accounts in regulated investment companies:

> (7) Custodial accounts for regulated investment company stock.—
>     (A) Amounts paid treated as contributions.—*For purposes of this title*, amounts paid by an employer described in paragraph (1)(A) to a custodial account which satisfies the requirements of section 401(f)(2) shall be treated as amounts contributed by him for an annuity contract for his employee if—
>         (i) the amounts are to be invested in regulated investment company stock to be held in that custodial account, and
>         (ii) under the custodial account no such amounts may be paid or made available to any distributee before the employee dies, attains age 59½, has a severance from employment, becomes disabled (within the meaning of section 72(m)(7)), or in the case of contributions made pursuant to a salary reduction agreement (within the meaning of section 3121(a)(1)(D)), encounters financial hardship.
>     (B) Account treated as plan.—*For purposes of this title*, a custodial account which satisfies the requirements of section 401(f)(2) shall be treated as an organization described in section 401(a) solely for purposes of subchapter F and subtitle F with respect to amounts received by it (and income from investment thereof).
>     (C) Regulated investment company.—For purposes of this paragraph, the term "regulated investment company" means a domestic corporation which is a regulated investment company within the meaning of section 851(a).

26 U.S.C. § 403 (b)(7) (emphasis added).  The reference to § 401(f)(2) is significant because the latter provides generally that certain custodial accounts and annuity contracts are to be treated as qualified trusts, even though they are not trusts, *but only* for the purposes of Title 26, the Internal Revenue Code.

> (f) Certain custodial accounts and contracts.—*For purposes of this title,* a custodial account, an annuity contract, or a contract (other than a life, health or accident, property, casualty, or liability insurance contract) issued by an insurance company qualified to do business in a State shall be treated as a qualified trust under this section if —
>     (1) the custodial account or contract would, *except for the fact that it is not a trust*, constitute a qualified trust under this section, and
>     (2) in the case of a custodial account the assets thereof are held by a bank (as defined in section 408(n)) or another person who demon-strates, to the satisfaction of the Secretary, that the manner in which he will hold the assets will be consistent with the requirements of this section.
> *For purposes of this title,* in the case of a custodial account or contract treated as a qualified trust under this section by reason of this subsection,

the person holding the assets of such account or holding such contract shall be treated as the trustee thereof.

26 U.S.C. § 401(f)(emphasis added). Under § 401(a), a qualified trust is (a) a trust that features (b) employer/employee contributions for the benefit of an employee and (c) an anti-alienation provision. For purposes of the Internal Revenue Code, therefore, § 401(f) allows certain custodial accounts or annuities having the (b) and (c) features, but not being trusts, to be treated as qualified trusts. Again, that special treatment is expressly limited to the Internal Revenue Code and so does not apply at all to the Bankruptcy Code.

For its part, ERISA generally requires that all assets of an employee benefit plan be held in trust. Indeed, 29 U.S.C. § 1103(a) explicitly provides: "Except as provided in subsection (b) of this section, all assets of an employee benefit plan shall be held in trust by one or more trustees." If a pension plan is subject to or governed by ERISA, it usually complies with ERISA's trust requirement and thus satisfies the trust requirement of § 541(c)(2). However, ERISA specifically exempts § 403(b) annuity plans from ERISA's trust requirement:

The requirements of subsection (a) of this section shall not apply . . . to a contract established and maintained under section 403(b) of Title 26 to the extent that assets of the contract are held in one or more custodial accounts pursuant to section 403(b)(7) of Title 26.

29 U.S.C. § 1103(b)(5). Thus, ERISA itself does not require that the assets of § 403(b) plans be held in a trust.

The reason for this exception to the trust requirement is illuminating. Since 1942, and long before the enactment of ERISA, there has been a tax statute, in one form or another, that allowed employees of certain charitable organizations to defer income under a tax-sheltered annuity arrangement. Revenue Act of 1942, ch. 619, § 162, 56 stat. 798 (codified as amended in scattered sections of 26 U.S.C.). Section 403(b) of the Internal Revenue Code was added by Congress in 1958 in order to restrict the amount of compensation deferrable under such annuity arrangements, since some charitable employers were "paying selected employees all, or almost all, of their compensation in the form of annuities." H.R. Rep. No. 775, 85th Cong., 1st Sess. 15, 16 (1957). Section 403(b) continued the deferral, but provided a formula for limiting the amount deferred according to the employee's compensation and length of service. No trust was required or employed as a part of these tax-sheltered annuity arrangements.

It stands to reason that when ERISA was first proposed as a comprehensive piece of legislation to govern pension plans in the United States, the insurance companies,

8

having done a good business selling retirement annuities to charitable organizations, wished to keep that business. Since insurance companies are in the business of selling contracts, not acting as trustees, it was necessary for them to obtain an exception from ERISA's general rule that plan assets were to be held in trusts. In effect, the previous practice of the insurance companies was grandfathered in. Under the new ERISA, as Congress made clear,

> A trust is not to be required in the case of plan assets which consist of insurance (including annuity) contracts or policies issued by an insurance company qualified to do business in a State (or the District of Columbia). The same exemption will apply to the new section 403(b) custodial account arrangement involving investment in mutual funds, since these are treated as amounts contributed for an annuity contract under the tax law. *Although these contracts need not be held in trust*, nevertheless, the person who holds the contract is to be a fiduciary and is to act in accordance with the fiduciary rules of the substitute [bill of the conference committee] with respect to these contracts. For example, this person is to prudently take and keep exclusive control of the contracts, and is to use prudent care and skill to preserve this property.
> To the extent that plan assets are held by an insurance company they *need not be held in trust*.

Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 93rd Cong. 2d Sess., Report on Employee Retirement Income Security Act, Pub. L. No. 93-406 (Comm. Print 1974) (emphasis added). This statement shows that an employer, although he holds the annuity contracts for safekeeping and is a fiduciary under ERISA, need not be a trustee. Furthermore, the insurance company involved in the plan need not be a trustee under ERISA. If this is so, then this kind of tax-sheltered annuity plan can be carried out without any trustee at all, as historically it was.

Indeed, many states *forbid* insurance companies from being, or holding themselves out to be, trustees with respect to their separate accounts. The New York statute applicable to Equitable, for instance, states:

> Amounts allocated by the insurer to separate accounts shall be owned by the insurer, the assets therein shall be the property of the insurer, and no insurer by reason of such accounts shall be or hold itself out to be a trustee.

N.Y. Ins. Law § 4240(a)(12) (McKinney 2000).[1]

---

[1] The partial certificate covering Mrs. Adams indicates that Aetna's separate accounts are subject to the laws of Connecticut. These are virtually identical to New York's laws and specifically provide that "amounts allocated to a separate account in the exercise of the power granted by this section shall be owned by the company, and the company shall not be, nor hold itself out to be, a trustee with respect to such amounts." Conn. Gen. Stat. Ann.
(continued...)

If there are serious questions about whether Equitable is a trustee under the plan, there are equally serious questions about whether the employer may be a trustee. Nowhere in the plan or the certificate is it called one. It may be a fiduciary insofar as it is the custodian of the insurance contracts, as the Subcommittee on Labor observed, but, according to the Equitable's certificate, once the first payment is made on behalf of an employee, Equitable issues an annuity and all further dealings of any substance are between Equitable and the employee. In fact, the employer is little more than a conduit or forwarding agent acting on the employee's behalf to withhold and send off the annuity payments. Once the employer has forwarded the payment, it has no control over the money or the accounts into which the payment is invested, and it has no control over how the benefits are ultimately paid out to the employee. This being the case, the plan may be viewed as a device operating primarily under principles of agency rather than those of trust. Even if there is a mixture of trust and agency principles involved, the agency principles may predominate:

> A person may be both agent of and trustee for another. If he undertakes to act on behalf of the other and subject to his control, he is an agent; but if he is vested with the title to property which he holds for his principal, he is also a trustee. *In such a case, however, it is the agency relation that predominates, and the principles of agency, rather than the principles of trust, are applicable*. This is the case, for example, where the title to bonds or shares of stock or other securities is vested in a person who undertakes to hold subject to the directions of the person who caused the property to be vested in him. He is an agent since he is acting subject to the control of another, even though he is also trustee since he is vested with the title to the property. *Where an agent receives money for his principal, he acquires the legal title to the money according to the view that title to money passes with the possession of it; but he is nonetheless an agent, and the principles of agency are applicable.*

Austin Wakeman Scott and William Franklin Fratcher, *The Law of Trusts* § 8 (4th ed. 1987) (emphasis added). It is thus quite possible that the employer is only the agent, not the trustee, of the employee. Since the federal statutory framework does not compel, or even imply, the existence of a trustee in plans funded by tax-sheltered annuities, and since such plans can easily be operated without the use of a trustee, as indeed it appears they usually were, it is difficult to see how Mr. Adams has carried his burden of proving that there is real trust involved in this case. The law, the plan documents, and historical practice all seem to lean the other way.

---

(...continued)
§ 38a-433(a) (West 2000).

10

While we have doubts about the existence of a trust in Mr. Adams's plan, we are even more doubtful about Mrs. Adams's plan because we have even less information about its operation. The partial Aetna certificate in evidence does not describe what kind of annuity she may have purchased or how her contributions are held or invested. We have only the plan document which does not mention trust or trusteeship and speaks in terms too general for us to determine exact relationships or whether any trust is involved.

There are two possible bases for the bankruptcy court's decision in this case. First, the court may have relied on a per-se rule that any ERISA-qualified plan constituted a trust for bankruptcy purposes as a matter of law. We reject such a rule for reasons we have pointed out above. Second, the bankruptcy court may have based its ruling on a finding that the Debtors' plans actually involve real trusts. In that case, we are unable to see how such a finding might be justified given the relatively complete lack of evidence of any trust anywhere. No trust or trustee is mentioned in either of the plans or the certificates issued by the insurance companies, there is no evidence that either Debtor intended the creation of a trust, the federal statutes that apply to this kind of pension plan exempt it from any trust requirement, and the state statutes that regulate insurers who participate in such plans specifically prohibit the insurers from being trustees. Under these circumstances, we must hold that both Debtors have failed to carry their burdens of proof under 11 U.S.C. § 541(c)(2) in that they failed to show they were beneficiaries of trusts.

The dissent argues that § 541(c) of the Bankruptcy Code and § 1056(d)(1) of ERISA (requiring pension plans to contain anti-alienation clauses) are in conflict and that ERISA should prevail. We disagree and find no legal conflict between the statutes because each can be applied without interfering with the other. ERISA requires that most pension plans contain an anti-alienation clause, but it does not purport to describe the legal effects of such a clause under all circumstances. The Bankruptcy Code specifically provides that the debtor's interest in property becomes property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that restricts or conditions transfer of such interest by the debtor . . . ." 11 U.S.C. § 541(c)(1). A pension plan is "an agreement" and ERISA is "applicable nonbankruptcy law." Thus the Bankruptcy Code contains a provision that acts as a kind of enzyme within the medium of the Bankruptcy Code: it undoes all anti-alienation clauses except those appurtenant to trusts. 11 U.S.C. § 541(c)(2). Simply because one statute undoes the effect of another in a special area does not mean the statutes are in conflict. We think there is no conflict between these statutes, and in any case the bankruptcy statute is the more specific of the

two because it deals not just with anti-alienation clauses but with their effects in the specific situation of a bankruptcy.

In order to find a conflict, then, the dissent seeks the higher plane of policy and argues that "important policy considerations" and "[t]he goal of ERISA" require us to expand the language of § 541(c)(2) beyond trusts. Considering that Congress could easily have done this by adding a few words to § 541(c)(2), which was enacted some four years after ERISA became law, we are hesitant to conclude that their absence is certainly an oversight. We are also reluctant to conclude that the supposed policy balance is so lopsided that we must, as a court, rewrite black letter law. First, as a court, we are not familiar with all the policy implications of a very complex legislative scheme involving pension and tax law. Second, we have been repeatedly warned that a "policy question, involving, as it does, many weighty and conflicting considerations, must be resolved through the [legislative] process and not by judicial decision." *United States v. Robinson,* 361 U.S. 220, 229, 80 S. Ct. 282, 288 (1960). Thus, courts simply do not have the power to resolve pure policy questions. This is especially true when it comes to rewriting statutes with the intention of improving them.

> [P]etitioner argues that prohibiting a district court from granting a motion for judgment of acquittal filed one day late will lead to needless appeals and habeas corpus proceedings, where it will be more difficult for defendants to obtain relief than in motions directed to the trial court. Assuming, *arguendo*, that these contentions are accurate, we cannot permit them to alter our analysis, for we are not at liberty to ignore the mandate of Rule 29 in order to obtain "optimal" policy results. We are similarly unmoved by petitioner's contention that the "rationale" behind Rule 29(c)'s time limit does not apply where the motion for judgment of acquittal is filed a mere eight days after the trial. The only evident "rationale" behind Rule 29(c)'s 7-day time limit is that a motion for judgment of acquittal filed eight days after trial is a motion filed one day later than justice and equity demand.

*Carlisle v. United States,* 517 U.S. 416, 430, 116 S. Ct. 1460, 1468 (1996) (citation omitted); *accord Commissioner v. Lundy*, 516 U.S. 232, 252, 116 S. Ct. 647, 650 (1996) ("We are bound by the language of the statute as it is written . . . even if the rule [petitioner] advocates might 'accor[d] with good policy . . . .'"); *Badaracco v. Commissioner,* 464 U.S. 386, 398, 104 S. Ct. 756, 764 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

The dissent would like us to amend § 541(c)(2) so as to read: "A restriction on the transfer of a beneficial interest of the debtor in a trust or ERISA-qualified pension plan that is enforceable under applicable non-bankruptcy law is enforceable in a case under this

title." We believe that if there are to be any changes in the language of § 541(c)(2) such changes must be made by Congress, not by the courts.

## V. CONCLUSION

For the foregoing reasons, we **REVERSE** the bankruptcy court's order that is the subject of this appeal and **REMAND** the case for further proceedings.[2]

---

[2] The bankruptcy court decided the § 541(c)(2) issue in connection with overruling the Trustee's objection to the Debtors' claims of exemptions in the pension plans. The court no doubt thought that its ruling on the § 541(c)(2) issue rendered moot all other issues relating to the Debtors' claims of exemptions in the plans. However, because the Debtors' have failed to prove that their interests in their pension plans should be excluded from property of the estate under § 541(c)(2),the bankruptcy court must now consider the remaining issues that relate to the Debtors' claims of exemptions in their pension plans, and the Trustee's objection thereto.

JENNIE D. LATTA, Bankruptcy Appellate Panel Judge, dissenting. I agree with the majority that the Debtors have failed to prove that their pension plans constitute trusts. In fact, I would put the matter more strongly – the Debtors' pension plans manifestly are *not* trusts. Because I do not believe, however, that the presence of an express trust is required to exclude an ERISA-qualified retirement plan from the assets of a bankruptcy estate, I respectfully dissent from the opinion of the majority.

With respect to statutory construction, the Sixth Circuit Court of Appeals has instructed:

> "We read statutes and regulations with an eye to their straight-forward and commonsense meanings." [Citation omitted.] We ascertain the plain meaning of a statute by reviewing "the particular statutory language at issue, as well as the language and design of the statute as a whole." [Citation omitted.] "When we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end." [Citation omitted.]
>
> We may not, however, rely on the literal language of the statute where such reliance would lead to absurd results or an interpretation which is inconsistent with the intent of Congress. [Citations omitted.] Every word in the statute is presumed to have meaning, and we must give effect to all the words to avoid an interpretation which would render words superfluous or redundant.

*Walker v. Bain,* 257 F.3d 660, 666-67 (6th Cir.2001). The majority's reading is inconsistent with the clear intent of Congress that ERISA-qualified pension plans not be subject to creditor claims.

Outside the bankruptcy law, I find no functional distinction between the protections afforded to beneficiaries of ERISA-qualified pension plans in which assets are held in trust and those in which assets are used to purchase annuity contracts. Outside of bankruptcy, no creditor of the Adams would be able to reach the debtors' beneficial interests in their pension plans to satisfy claims, and this is true not because these interests are exempt from execution pursuant to state law, but because they are exempt from execution pursuant to federal law. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 110 S. Ct. 680 (1990)(permitting no equitable exception to ERISA's anti-alienation provision). The filing of a bankruptcy case should not change this result.

In *Patterson v. Shumate*, the Supreme Court held that "the antialienation provision required for ERISA qualification . . . constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." 504 U.S. at

14

759. Earlier in that opinion, the Court pointed out that "[t]he natural reading of the provision [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in *a plan* or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Id*. at 758. (emphasis added). While it is true that the specific issue before this Panel was not before the Court in *Shumate*, and thus that the reference to "the plan" may be merely dicta, I think that the reference actually illumines the Court's understanding of the intent of Congress expressed both in ERISA and the Bankruptcy Code. The Court, recalling its previous refusal in *Guidry* to recognize any exceptions to ERISA's anti-alienation provisions outside the bankruptcy context, asserted that its holding gave "full and appropriate effect to ERISA's goal of protecting pension benefits," and that it furthered the important policy underlying ERISA of uniform treatment of pension benefits. *Id.* at 764-65. Each of these considerations applies with respect to plans that are not required to hold certain assets in trust.

The majority has advanced no policy considerations that support their more restrictive reading of section 541(c)(2). Instead their conclusion rests solely upon the literal requirement that a debtor's beneficial interest be held "in a trust." This emphasis on the asserted plain meaning of one section of the Bankruptcy Code fails to give proper deference to the unqualified prohibition on alienation found in ERISA. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S. Ct. 2474, 2482-83 (1974) quoted in *Guidry*, 493 U.S. at 375. It is not section 541(c)(2) that excludes a debtor's beneficial interest in an ERISA-qualified plan from the bankruptcy estate, but rather the anti-alienation provision itself which excludes it.

The prior decision of the Sixth Circuit in *Wilcox* does not alter this conclusion. In that case, the court asserted that

> An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust? Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under nonbankruptcy law?

*Wilcox v. General Retirement System of the City of Detroit (In re Wilcox)*, 233 F.3d 899, 904 (6th Cir. 2000). In that case, however, it was undisputed that the debtor's interest in his retirement plan was a beneficial interest in a trust. Thus there was no specific discussion of the trust requirement, and certainly no statement that it included only "express trusts." More importantly, the retirement plan under consideration in *Wilcox* was not an ERISA-qualified plan, and thus the court was not called upon to consider the

15

important policy considerations presented in this case where a federal statute restricts transfer of the Debtor's interest.

The majority relies heavily upon the decision of the bankruptcy court in *Barnes* to support its conclusion that only an interest in a trust can be the subject of an enforceable transfer restriction within the meaning of 11 U.S.C § 541(c)(2). *See In re Barnes*, 264 B.R. 415 (Bankr. E.D. Mich. 2001). Significantly, while that decision requires the presence of a "trust" before a beneficial interest is excluded from a bankruptcy estate, the contract found to be a trust is virtually indistinguishable from the contracts in the present case. Rather than following the three-step analysis announced in *Wilcox*, the court focused solely upon the "*sine qua non*" of a trust: the division of legal title from equitable interest. *See Barnes*, 264 B.R. at 432. The court concluded that a variable annuity contract may be a trust for purposes of § 541(c)(2). I find this result disingenuous, and much prefer a straightforward holding that § 541(c)(2) does not require the existence of an express trust to exclude an ERISA-qualified plan from a bankruptcy estate.

It is important to emphasize that *Shumate* did not exclude a debtor's interest in an ERISA-qualified pension plan from the bankruptcy estate under § 541(c)(2) because that interest looks something like an interest in a spendthrift trust. ERISA-qualified pension plans do not look anything like spendthrift trusts. They may be self-settled and they permit the voluntary invasion of corpus under certain specified conditions. The rationale advanced for excluding spendthrift trusts from the estate, that the filing of a bankruptcy case should not be cause for frustrating the expectations of the settlor of the trust, is not present with respect to ERISA-qualified pension plans. *See* H.Rep. No. 95-595, 95th Cong., 1st Sess. 176 (1977), U.S.Code & Admin.News 1978 pp. 5963, 6136. Rather, completely different policy considerations are at work in the case of ERISA-qualified pension plans. The goal of ERISA is to protect and preserve pension benefits for pensioners and their dependents.

In announcing its decision in *Guidry*, the Court emphasized this policy:

> Section 206(d) [29 U.S.C. § 1056] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are blameless), even if that decision prevents others from securing relief for the wrongs done them.

*Guidry*, 493 U.S. at 365. Likewise in *Shumate,* the Court characterized its holding as giving "full and appropriate effect to ERISA's goal of protecting pension benefits." *Shumate,* 504

U.S. at 764. Further, the court indicated that its decision would ensure that "the treatment of pension benefits will not vary based upon the beneficiary's bankruptcy status." *Id*.

The narrow reading of § 541(c)(2) advanced by the majority of the Panel nullifies the anti-alienation provision of ERISA for non-trust, qualified pension plans. The majority advances no policy argument in favor of this reading. Were we called upon simply to construe § 541(c)(2), without the benefit of the Supreme Court's opinions in *Guidry* and *Shumate,* then a narrow, "plain-meaning" reading would be appropriate, but I believe that we must go beyond § 541(c)(2) and include within our discussion the plain meaning of ERISA's anti-alienation requirement. When this is done, it is clear that ERISA-qualified pension plans, whether held in trust or not held in trust, are excluded from the bankruptcy estate.