### In re Todd D. WENDT, Debtor.

#### No. 04–33329.

United States Bankruptcy Court, D. Minnesota.

March 3, 2005.

Patti J. Sullivan, St. Paul, MN, trustee.

Robert J. Everhart, New Brighton, MN, for debtor.

ORDER RE: STATUS OF ASSET
UNDER 11 U.S.C. § 541(c)(2)

GREGORY F. KISHEL, Chief Judge.

This Chapter 7 case came on before the Court for hearing on the Trustee's objec-

tion to the Debtor's claim of exemption in certain funds held in a "403(b) Thrift" account. Trustee Patti J. Sullivan appeared as objector and counsel for the bankruptcy estate. The Debtor appeared by his attorney, Robert J. Everhart. The Court received counsel's argument on a threshold issue: whether the Debtor's interest in the asset in question was excluded from the bankruptcy estate by operation of 11 U.S.C. § 541(c)(2). Upon the record made for that issue, the Court makes the following order.

The Debtor filed a voluntary petition under Chapter 7 on June 4, 2004. On his Schedule C, he included an entry for an asset that he valued at $19,000.00. He described the asset as follows:

> 403B through employer approximately— $19,000.00 (not part of the estate for information purposes only).

This asset is an account maintained at the Mutual of America Life Insurance Company for the Debtor's benefit. It is distributed among four different investment funds.[1] The Debtor's entitlement to this asset is an incident of his employment by the Board of Social Ministry, an entity that is associated with the Evangelical Lutheran Church in America. The "Specifications" of this employee benefit call it a "Pension Plan."[2] A group called the "Board of Social Ministry Pension Plan Committee" is the "Plan Sponsor" that established it and maintains it. As a participant in the plan, the Debtor may authorize the Board of Social Ministry to "make Salary Reduction Contributions to Mutual on his behalf." The Board of Social Ministry is obligated to make "Employer Contributions to Mutual on behalf of each Participant." At the end of the "Specifications," the Sponsor "represents":

> The Plan is established with the intention that it be a church plan and, as such, exempt from the requirements of the Employee Retirement Income Security Act (ERISA), the Retirement Equity Act and other federal laws and regulations governing qualified retirement plans. The fact that certain provisions of this plan may comply with some requirements of such federal laws should not be interpreted as an attempt to come within the provisions of those laws or comply with them.

The issue at bar is whether the Debtor's interest in this asset passed into his bankruptcy estate in the first place, by operation of 11 U.S.C. § 541(a). In making the recitation "not part of the estate" in his Schedule C, the Debtor was relying on 11 U.S.C. § 541(c)(2).[3] This provision takes its effect against the broad scope of the bankruptcy estate under 11 U.S.C. § 541(a), as a second-level qualification to

---

1. The record contains a statement issued by Mutual of America for the quarter ending June 30, 2004. This document suggests that the account had relatively small balances in the fund as of the beginning of that quarter on April 1, 2004. It also reflects that on May 10, 2004, contributions were made to all four investment funds in amounts that ranged from $2,673.06 to $5,346.14.

2. The "Specifications" are an exhibit to the Trustee's reply to the Debtor's response. The Debtor's counsel sent this document to the Trustee. The record contains only one other item from the organic documents for the Pension Plan for Employees of Board of Social Justice. That is a single page attached as Exhibit A to the Debtor's counsel's responsive brief. This page is from some document that the Debtor's counsel did not identify by name when he made a passing reference to it.

3. Though the Debtor advanced this theory in the relevant line-entry on his Schedule C, he hedged his bets by also making a claim of exemption to the asset under 11 U.S.C. § 522(d)(10)(E).

that inclusiveness.[4] The trustee challenged the Debtor's assertion in tandem with her objection to the Debtor's claim of exemption.[5]

The parties' arguments could best be summarized as follows.

The Trustee notes that the asset in question is an employee's interest in a "403(b) plan," a tax-sheltered annuity pension plan under which the liability for and payment of income tax can be deferred under 26 U.S.C. § 403(b). To be more precise, the form of the Board of Social Ministry's program is a so-called "church plan" under 26 U.S.C. § 403(b)(9).[6] All information given to the Trustee indicates that the Debtor's interest in the plan was funded by deposits that he or his employer made with Mutual of America, there placed into one of the several investment fund accounts that the Debtor holds under his own name and in his own right. Under all of these circumstances, the Trustee maintains, the plan does not rest on a "trust" relationship, and the Debtor has no "beneficial interest" in the funds as such is understood under the general law of trusts.[7] Thus, she argues, because § 541(c)(2) requires by its terms a trust relationship, that section's exclusion simply did not apply. For legal authority, the Trustee relies on *In re Adams*, 302 B.R. 535 (6th Cir. BAP 2003).

The Debtor's response is somewhat elliptical. His counsel never quite addresses the Trustee's text-based analysis on its own terms. Instead, he argues that, in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court "definitively ruled that if a plan is qualified for treatment under ERISA, it is excluded from the bankruptcy estate under 11 U.S.C. § 541(c)." He then argues, at least by negative implication, that "a 403(b) church plan [like the asset in question here] is ... qualified for treatment under ERISA and excluded from the bankruptcy estate." He makes only one nod to the Trustee's argument, and a dismissive one at that: in *Adams*, "the Sixth Circuit Bankruptcy Appellate Panel was

---

**4.** Section 541(a)(1) provides that the bankruptcy "estate is comprised of ... all legal and equitable interests of the debtor in property as of the commencement of the [bankruptcy] case ..." In pertinent part, § 541(c)(1) provides that:

 ... an interest of the debtor in property becomes property of the estate under [11 U.S.C. § 541(a)(1)] ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
 (A) that restricts or conditions transfer of such interest by the debtor ...
 However, under § 541(c)(2),
 [a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under [the Bankruptcy Code].

**5.** *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) imposed a deadline on the Trustee's objection to exemptions. Strictly speaking, there was no

deadline for her challenge to the Debtor's assertion of exclusion from the estate. Given the possible applicability of Fed. R. Bankr.P. 7001(2) and (9), one could quibble that the Trustee should have litigated this issue via adversary proceeding. Nonetheless, it was not inappropriate to push the issue forward at the same time and via the same proceeding— from the perspective of judicial economy if nothing else. The issue is a matter of law, and readily resolved via motion.

**6.** This sort of plan uses "retirement income accounts" that enjoy the same tax-deferral benefits that an annuity has under the general provisions of 28 U.S.C. §§ 403(b)(1)-(5).

**7.** The Trustee relies on the content of the documents given to her thus far, and specifically on their lack of language that would designate Mutual of America or any other entity as a trustee, the form of its holding of the funds as a trust, or the Debtor as a beneficiary of a trust relationship.

908

mistaken in not following [*Patterson v. Shumate*] by adding additional requirements to exclude ERISA plans." [8]

■ The Debtor's argument ignores the trees for a forest that is not there anyway. The holding in *Patterson v. Shumate* was not at all as conclusory or categorical as counsel would have it—because, among other reasons, "the plain language of the Bankruptcy Code and ERISA are determinant," *Patterson v. Shumate*, 504 U.S. at 757, 112 S.Ct. 2242, and the language of § 541(c)(2) is the first avenue of inquiry. *Patterson v. Shumate* did not hold in so many words that being "ERISA-qualified" brings about the exclusion from the bankruptcy estate *in se*. That proposition is tantamount to a syllogism, because the analysis has to start with the language of the governing statute, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), and here the language that creates

the exclusion is § 541(c)(2). By its very terms, that language operates only on "a beneficial interest of the debtor in a trust." Hence, to determine whether the exclusion lies, the "inquiry ... has three parts: First, does the debtor have beneficial interest in a trust? Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under non-bankruptcy law?" *In re Wilcox*, 233 F.3d 899, 904 (6th Cir.2000), as cited and relied on in *In re Adams*, 302 B.R. at 539.[9]

■ Trustees' and debtors' counsel often cite *Patterson v. Shumate* as if it melded the operation of ERISA and the Bankruptcy Code, giving immediate and inevitable effect during the formation of the bankruptcy estate to a vaguely-conceived pre-petition process of "ERISA qualification." Such a reading is the result of short-circuited thinking and an over-reliance on jargon and trope.[10] In point of

8. The syntax of this sentence is confusing. Apparently, counsel takes the Sixth Circuit B.A.P. to task for "adding additional requirements" to some pre-existing legal test.

9. As precedent, *Wilcox* is not binding on a trial court in the Eighth Circuit. However, the Eighth Circuit has not spoken directly to the issue at bar. Its only decisions on the ERISA-and-§ 541(c)(2) issue did not explicitly go to the most basic level of analysis under § 541(c)(2), and in any event were overruled by *Patterson v. Shumate. See in re Swanson*, 873 F.2d 1121 (8th Cir.1989); *In re Graham*, 726 F.2d 1268 (8th Cir.1984). *But see in re Nelson*, 322 F.3d 541, 544 (8th Cir.2003) (funds to be distributed to debtor under QDRO in divorce proceeding, but "still held in trust" by administrator of debtor's ex-spouse's pension plan as of debtor's bankruptcy filing, and subject there to anti-alienation provision, were excluded from debtor's bankruptcy estate under § 541(c)(2)). In the absence of an on-point pronouncement from our circuit, *Wilcox* is properly considered as persuasive authority; and, it is hard to disagree with its formulation, drawn directly and without embellishment from the statutory text as it is.

10. At least in a denotative manner, the phrase "ERISA qualified plan" suggests that there is some entity out there that is charged with reviewing employee pension plans during their formation, for compliance with the content requirements of "ERISA," which apparently is to be understood as Chapter 18, "Employee Retirement Income Security Program," of Title 29 of the United States Code, governing "Labor." There really is no provision for such a process in Chapter 18, which does not have any reference to the concept of a plan "qualified" under its substantive prescriptions. The coordinate enactments in the Internal Revenue Code, specifically 26 U.S.C. § 401(a), established the concept of a "qualified trust," created as a "part of a stock bonus, pension, or profit-sharing plan of an employer," that would enjoy and confer the benefits of deferral of taxation on employee-participants. However, being so "qualified," i.e., having various provisions for structure and governance similar to those under Title 29, only entitles the *trust* and its beneficiary-participants to enjoy deferral of income tax liability otherwise imposed under Title 26, the Internal Revenue Code. It does not necessarily speak to the *plan's* compliance with the

fact, an actual, direct consideration of ERISA is relevant only to the third part of the *Wilcox* test, whether non-bankruptcy law provides a means for the enforcement of a restriction on transfer. In a concrete case, the restriction on transfer is created and evidenced in the terms of an independently-documented trust. Its existence is proved up by producing the relevant text from the trust's organic documents. It is incidental to the analysis under the terms of § 541(c)(2) that ERISA's terms require a trust structure, 29 U.S.C. § 1103(a), plus provision for restraints on alienation and assignment in the documents governing beneficiaries' rights, 29 U.S.C. § 1056(d)(1). ERISA requires these terms in a plan as a prerequisite for the affording of various benefits and protections under it, specifically the imposition of a fiduciary relationship between plan administrators and employee-beneficiaries. However, their concrete existence is established by the "documents and instruments governing the plan." They are not deemed to arise or to apply by direct operation of the ERISA statute.

In the last instance, ERISA has its direct significance under § 541(c)(2) because it provides *remedies at law* for the enforcement of a separately- and privately-created prohibition on assignment or alienation of pension benefits. This satisfies the third element identified in the text of § 541(c)(2). The Supreme Court explicitly recognized this. *Patterson v. Shumate,* 504 U.S. at 760, 112 S.Ct. 2242.[11]

 As the proponent of an exclusion of assets from the estate, the Debtor had the initial burden of production of evidence to meet the elements of § 541(c)(2). *In re Adams,* 302 B.R. at 540. He did not meet that burden. The several excerpts from the documents that govern the plan contain no provisions purporting to establish a trust, or restricting a voluntary or involuntary transfer of the Debtor's interest in any asset acquired through the plan.[12]

This conclusion ends the inquiry, and supports a holding for the Trustee. However, in the interests of clarity, the theory framed in the Debtor's response should be treated, even though it did not dovetail with the Trustee's theory or with the appropriate rule of decision.

 The gist of the Debtor's response is that "church plans" are "ERISA qualified," or at least that participants in church plans enjoy the protections that beneficiaries of "ERISA qualified plans" enjoy. Even were ERISA "qualification" the key generally, so as to create an umbrella of statutory protection with a deemed restraint on alienation, this argument would still fail.

The documents and the record self-proclaim the pension plan for the employees

---

prescriptions of Title 29, which generally reflect the coordinate provisions of the Tax Code but which do always mirror them identically. *See, in general,* Stephen R. Bruce, *Pension Claims: Rights and Obligations,* at pp. 2–12 (2d ed.1993).

**11.** So did the Sixth Circuit in *Wilcox,* albeit by contrast. Though the Municipal Employees' Pension Plan before the Sixth Circuit was not subject to ERISA, the Detroit City Charter had been repeatedly construed by the Michigan state courts to support remedies for the enforcement of various provisions of the plan.

That body of legislation and jurisprudence was sufficient to establish the enforceability "under applicable non-bankruptcy law" of the plan's anti-alienation provisions, which met the third element of § 541(c)(2). 233 F.3d at 905–906.

**12.** In point of fact, the account statements in the record give the impression that the funds in the accounts are freely liquid, subject to any income tax consequences of withdrawal and subject to the stated limitations on vesting.

of the Board of Social Ministry as a "church plan." This is a term defined in ERISA, *see* 29 U.S.C. § 1002(33). For the purposes of all further discussion, the Board of Social Ministry plan will be assumed to be a church plan.[13] Entirely to the contrary of counsel's argument, church plans and the rights of their employee-members are exempt from all of the substantive governance of ERISA, as set forth in Title 29. Contrary to counsel's conclusory distinction, it is not a matter of plan providers being exempt from compliance requirements, but plan participants still enjoying an ERISA-derived and -deemed statutory protection for their interests in the plans.

This is patent from a simple structural analysis of the references in the statute. "The provisions of ... [S]ubchapter [I of Chapter 18 of Title 29] shall not apply to any employee benefit plan if—... such plan is a church plan ... with respect to which no election has been made under [26 U.S.C. §] 410(d) ..." 29 U.S.C. § 1003(b)(2). Chapter 18 is titled "Employee Retirement Income Security Program"; its Subchapter I is titled "Protection of Employee Benefit Rights." Subchapter I incorporates the substantive provisions of Title I of the original enact-

ment of the Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, both prescriptive and regulatory. The reporting and disclosure obligations of administrators of employee benefit plans are contained in Part 1, "Reporting and Disclosure," of Subtitle B ("Regulatory Provisions") of Subchapter I. The requirement for the establishment of a trust under 29 U.S.C. § 1103(a)[14] and the requirement of an anti-alienation provision under 29 U.S.C. § 1056(d)(1),[15] are also part of Subchapter I—both under Subtitle B, the former under its Part 4 ("Fiduciary Responsibility") and the latter under its Part 2 ("Participation and Vesting").

29 U.S.C. § 1003(b)(2) excepts church plans from the coverage of all of these provisions, unless the church makes an affirmative and irrevocable election under 26 U.S.C. § 410(d), to comply with all of the ERISA-coordinate provisions of the Internal Revenue Code. The governing committee of the Board of Social Ministry expressly declined to make that election, per Section 1.2 of the excerpt attached to the Debtor's response. Thus, as an affiliate of a church, the Board of Social Ministry was not legally required to structure its pension plan as a trust, or to designate

---

13. " '[C]hurch plan' means a plan established and maintained ... for its employees ... by a church or by a convention or association of churches ..." 29 U.S.C. § 1002(33)(A). In turn, "[t]he term employee of a church or a convention or association of churches includes—... an employee of an organization ... which is controlled by or associated with a church or a convention or association of churches ..." 29 U.S.C. § 1002(33)(C)(ii)(II). Finally, "[a]n organization ... is associated with a church or a convention or association of churches if it shares common religious bonds or convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv). Per Section 1.2 of the excerpt from an unidentified document that is attached to the Debtor's response, the

Board of Social Ministry's plan is "intended to be a qualified defined contribution church plan." Further, the governing committee for the plan is declared to consist of "members who share common religious bonds and convictions with the Evangelical Lutheran Church in America."

14. In pertinent part, this statute provides: "... [A]ll assets of an employee benefit plan shall be held in trust by one or more trustees."

15. This statute provides, quite simply, that "[each] pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

its participants' interests as inalienable.[16] In *Patterson v. Shumate,* the Supreme Court made a general observation just to that effect, in *dictum.* 504 U.S. at 762, 112 S.Ct. 2242. More to the point of the Debtor's theory, the statute itself does not impose either of these characteristics on the Board's plan by operation of law; the language clearly is prescriptive rather than deeming. Finally, the Board certainly did not make such provisions on a voluntary basis, at least as appears from the record at bar.

Even disregarding the gap in substantive law that flaws the Debtor's argument, it crumbles internally on its own assumptions. The pension plan in question here is not "ERISA qualified," nor does it have any vaguely-conceived equivalent of that status.

The upshot of all this is the asset in question is property of the Debtor's bankruptcy estate. As such, it is subject to exemption or to the Trustee's administration, as appropriate.

IT IS THEREFORE DETERMINED AND ORDERED:

1. The Debtor's interest in the pension plan for employees of the Board of Social Ministry is not excluded from his bankruptcy estate.

2. The Trustee's objection to the Debtor's claim of exemption in that asset will proceed on its merits.

---

**16.** This conclusion is further supported by 29 U.S.C. § 1051 which governs the "coverage" of the requirements in Part 2, "Vesting and Contribution." It notes that Part 2 "shall apply to any employee plan described in [29 U.S.C. § ] 1003(a) ... (and not exempted under [29 U.S.C. §] 1003(b)) ..." As noted, the requirement of an anti-alienation provision is in Part 2, at 29 U.S.C. § 1056(d).