In re Jeffrey C. GOULD and Dlorah
F. Gould, Debtors.

Gary V. Skiba, Trustee, Movant,

v.

Jeffrey C. Gould and Dlorah
F. Gould, Respondents.

No. 04–11889.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 12, 2005.

Gary V. Skiba, Esq., Trustee, Erie, PA,
pro se.

Daniel J. Hartle, Esq., Bradford, PA, for
Debtors.

*OPINION*

WARREN W. BENTZ, Bankruptcy
Judge.

Jeffrey C. Gould ("Debtor") and Dlorah
F. Gould ("Mrs.Gould") filed a voluntary
Petition under Chapter 7 of the Bankrupt-
cy Code on July 22, 2004. Gary V. Skiba
("Trustee") serves as Chapter 7 Trustee.
Before the Court is the TRUSTEE'S OB-
JECTIONS TO DEBTOR'S AMENDED
CLAIM FOR EXEMPTION.

Debtor is employed by the Children's
Home of Bradford, Pennsylvania and is a
participant in the CHILDREN'S HOME
OF BRADFORD, PA PENSION PLAN
(the "Pension Plan"). The Pension Plan is
a tax sheltered annuity plan qualified un-
der section 403(b) of the Internal Revenue
Code, 26 U.S.C. § 403(b). The Pension
Plan summary provides the following anti-
alienation clause:

> ...your interest may not be sold, used
> as collateral for a loan, given away or
> otherwise transferred. In addition, your
> creditors may not attach, garnish or oth-
> erwise interfere with your account.

Debtor asserts that his interest in the
Pension Plan is excluded from the bank-
ruptcy estate pursuant to the terms of 11
U.S.C. § 541(c)(2).[1]

1. All references to Code sections are to Title 11 of the United States Code unless otherwise indicated.

The Trustee posits that the Pension Plan is an annuity by definition and not a trust; that only an interest in a trust can be a subject of an enforceable transfer restriction within the meaning of 11 U.S.C. § 541(c)(2); and therefore, the Debtor's Pension Plan cannot be excluded from the bankruptcy estate.

Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

There is a conflict among the courts on the issue of whether annuity pension plans that are tax qualified under the provisions of 26 U.S.C. § 403(b) are excluded from the bankruptcy estate by the provisions of § 541(c)(2). The Trustee relies on the split decision in the case of *In re Adams,* 302 B.R. 535 (6th Cir. BAP 2003) in support of his position.

In *Adams,* the BAP focuses on whether § 541(c)(2) excludes only property held in trust, or if the exclusion extends to a non-trust ERISA-qualified plan.[2] The majority in *Adams* reads the statute literally to require a trust. *Id.* Other courts have likewise held that the exclusion provided § 541(c)(2) is limited to interests in trusts and that no trust relationship exists where the plan at issue is an annuity contract. *In re Wendt,* 320 B.R. 904, (Bankr.D.Minn. 2005); *In re Clifford,* 2005 WL 331315 (Bankr.D.Minn. Feb. 2, 2005); *In re Quinn,* 299 B.R. 450 (Bankr.W.D.Mich. 2003); and *In re Barnes,* 264 B.R. 415 (Bankr.E.D.Mich.2001).

The dissent in *Adams* acknowledges that the § 403(b) plans at issue are *not* trusts. The dissent concludes that the presence of an express trust is not required to exclude an ERISA-qualified plan from the assets of a bankruptcy estate. *In re Adams,* 302 B.R. at 546 (Latta, J., dissenting). Judge Latta states:

The majority's reading is inconsistent with the clear intent of Congress that ERISA-qualified pension plans not be subject to creditor claims.

Outside the bankruptcy law, I find no functional distinction between the protections afforded to beneficiaries of ERISA-qualified pension plans in which assets are held in trust and those in which assets are used to purchase annuity contracts. Outside of bankruptcy, no creditor of the Adams would be able to reach the debtors' beneficial interests in their pension plans to satisfy claims, and this is true not because these interests are exempt from execution pursuant to state law, but because they are exempt from execution pursuant to federal law. *See Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (permitting no equitable exception to ERISA's antialienation provision). The filing of a bankruptcy case should not change this result.

In *Patterson v. Shumate,* the Supreme Court held that "the antialienation provision required for ERISA qualification...constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." 504 U.S. at 759, 112 S.Ct. 2242[, 119 L.Ed.2d 519]. Earlier in that opinion, the Court pointed out that "[t]he natural reading of the provision [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in *a plan* or trust that

---

**2.** ERISA stands for the Employee Retirement Income Security Act of 1974, which is codified at 29 USC § 1001–1461.

contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Id.* at 758, 112 S.Ct. 2242. (emphasis added). While it is true that the specific issue before this Panel was not before the Court in *Shumate,* and thus that the reference to "the plan" may be merely dicta, I think that the reference actually illumines the Court's understanding of the intent of Congress expressed both in ERISA and the Bankruptcy Code. The Court, recalling its previous refusal in *Guidry* to recognize any exceptions to ERISA's anti-alienation provisions outside the bankruptcy context, asserted that its holding gave "full and appropriate effect to ERISA's goal of protecting pension benefits," and that it furthered the important policy underlying ERISA of uniform treatment of pension benefits. *Id.* at 764–65, 112 S.Ct. 2242. Each of these considerations applies with respect to plans that are not required to hold certain assets in trust.

The majority has advanced no policy considerations that support their more restrictive reading of section 541(c)(2). Instead their conclusion rests solely upon the literal requirement that a debtor's beneficial interest be held "in a trust." This emphasis on the asserted plain meaning of one section of the Bankruptcy Code fails to give proper deference to the unqualified prohibition on alienation found in ERISA. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974) quoted in *Guidry,* 493 U.S. at 375, 110 S.Ct. 680.

It is not section 541(c)(2) that excludes a debtor's beneficial interest in an ERISA-qualified plan from the bankruptcy estate, but rather the anti-alienation provision itself which excludes it. *Id.* at 547–48.

In *Morter v. Farm Credit Services,* 937 F.2d 354 (7th Cir.1991), the court determined that:

The proper inquiry under section 541(c)(2), then, is not whether the accumulated funds are in a "traditional" spendthrift trust, but whether the retirement plan bars the beneficiary and his creditors from reaching the funds. If it does, the plan is tantamount to a spendthrift trust under state law.

*Id.* at 358.

Other courts, including this one, have likewise viewed § 541(c)(2) in a broader fashion and have determined that a tax sheltered annuity plan which is tax-qualified under § 403(b) and contains appropriate anti-alienation language is excluded from the bankruptcy estate. *In re Johnson,* 191 B.R. 75 (Bankr.M.D.Pa.1996); *In re Bennett,* 185 B.R. 4 (Bankr.E.D.N.Y. 1995); *In re Nolen,* 175 B.R. 214 (Bankr. N.D.Ohio 1994); *In re Kelvington,* 146 B.R. 358 (Bankr.W.D.Pa.1992); and *In re Woodward,* 1988 WL 236353 (W.D.Ky. 1988).

We have previously stated that:

An agreement which restricts a debtor's use of funds and is enforceable outside of bankruptcy will be upheld by a court applying 11 U.S.C. § 541(c)(2), and those funds will neither become property of the estate nor available to his creditors. *In re Kelvington,* 146 B.R. 358 (Bankr.W.D.Pa.1992); *see also Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Velis v. Kardanis,* 949 F.2d 78 (3d Cir. 1991).

*In re Ziegler,* 156 B.R. 151, 154 (Bankr. W.D.Pa.1993).

The Trustee also directs our attention to several cases involving Individual Retirement Accounts ("IRAs"). *In re Williams,* 290 B.R. 83 (Bankr.E.D.Pa.2003); *In re Martich,* Bankr.No. 97–23010–BM, Motion No. 97–4488M (Bankr.WD PA 1988). *See also In re Davis,* 108 Fed.Appx. 717 (3d Cir.2004) (An IRA must constitute a "trust" to be excluded from the estate under § 541(c)(2).)

It is common knowledge that IRAs are self-settled, self-controlled investment vehicles. Individuals can and sometimes do invade an IRA, albeit with a stiff statutory tax penalty, to prematurely extract assets. In plain words, money placed in an IRA may be sheltered there tax-free for retirement, but the ever-available power to renege on the bargain demonstrates that IRAs are not lockboxes, as long as you are willing to pay the tax collector its due. Probably for this reason more than any other, IRAs as a whole have been found by many courts to be assets reachable by creditors in bankruptcy cases, because the debtor's control over it has little to distinguish it from any other asset available to satisfy claims.

Continuing, IRAs are from beginning to end controlled by the individual. A person sets up the IRA, decides how much to deposit therein (again, subject to some tax code restrictions), selects the buying and selling of investments, controls which custodial bank or stockbrokerage holds the IRA, and finally (once more, subject to tax law) how much to take out after reaching a certain age. In short, this is why IRAs are called "self-directed."

In sharp contradistinction, pension plans are the polar opposite. Pension plans usually are established by others, and, even when established by the self-employed, as we have seen above, they are subject to rigorous pension law and tax code restrictions. Pensions are normally controlled by trustees and outside agents, and even when closely held as in *Yates,* the regulatory structure found in ERISA and the IRC is an effective counterweight to blatant self-dealing.

Anthony Michael Sabino, *A Final Battle At The Last Line of Defense—The Struggle To Keep Erisa-Qualified Pension Plans Outside The Reach of Creditors In Bankruptcy Cases,* 12 Am.Bankr.Inst. L.Rev. 501, 516–17 Winter, 2004.

Our view is aligned with the view of the dissenting Opinion in *Adams.* We see no reason to treat a corporate pension plan differently than a 403(b) annuity pension plan. Both are set up by a third party, utilize the tax vehicles provided by the Internal Revenue Code to accumulate funds on a tax-free basis and contain anti-alienation clauses to prevent creditors from reaching a debtor's interests in the plan. We further conclude that this broader view of § 541(c)(2) is supported by the Congressional goal of protecting pension benefits. *See Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

The anti-alienation clause set forth in Debtor's Pension Plan sufficiently restricts Debtor's use of funds such that outside of bankruptcy, no creditor would be able to reach Debtor's interests, and therefore, the Pension Plan must be excluded from the bankruptcy estate by the provisions of § 541(c)(2).

An appropriate Order will be entered.

### ORDER

This 12th day of April, 2005, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that the TRUSTEE'S OBJECTION TO DEBTOR'S AMENDED CLAIM FOR EXEMPTION is REFUSED and that

745

Debtor's interest in the CHILDREN'S HOME OF BRADFORD, PA PENSION PLAN is excluded from the bankruptcy estate.